SUMMIT ACCOUNT AND COMPUTER SERVICE, INC., d/b/a General Collections, Inc. and Frank A. Webster, d/b/a Frank A. Webster & Associates, Appellants–Defendants,

v.

RJH OF FLORIDA, INC., d/b/a Kimco Leasing, The Successor In Interest to Kimco Leasing, Inc., Appellee–Plaintiff.

No. 02A04–9704–CV–135.

Court of Appeals of Indiana.

Jan. 16, 1998.

Rehearing Denied March 9, 1998.

C. David Peebles, Fort Wayne, for Appellants–Defendants.

Robert Owen Vegeler, Beers Mallers Backs & Salin, Fort Wayne, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Summit Account and Computer Service, Inc., d/b/a General Collections, Inc. and Frank A. Webster, d/b/a Frank A. Webster & Associates, appeal the judgment against them. We affirm.

### ISSUES

1. Whether sufficient evidence supports the trial court's finding that conversion had been committed.

2. Whether the successor plaintiff, RJH of Florida, Inc., may be awarded punitive damages and attorney fees pursuant to the conversion statute.

3. Whether the trial court committed reversible error by admitting certain testimony.

### FACTS [1]

Kimco Leasing, Inc. operated a business in Fort Wayne which financed the purchase of business personal property in Indiana and elsewhere by the use of leases. Richard J. Hoffman was president and CEO of Kimco. Summit Account and Computer Service, Inc., d/b/a General Collections, Inc. ("GCI"), was a licensed Indiana collection

agency in Fort Wayne, of which attorney Frank Webster was the principal owner (with his family owning the balance), president, and sole director. Frank Webster was also the sole proprietor of Frank A. Webster & Associates, which conducted a "considerable collection" law practice. (R. 1015). GCI and Webster shared the same address but maintained separate offices, telephone lines, bank accounts, records, and accounting systems.

In January 1989, staffer Sue Rose of Kimco met with some staff of GCI. Thereafter, on January 24, 1989, GCI personnel wrote to Rose (who was at the time a collector for Kimco authorized and directed by Hoffman to engage the services of GCI) proposing GCI's collection of delinquent Kimco accounts for a commission of "50 %, added on to your placed balance." (R. 1103). The letter did not discuss any fees for legal services. Kimco placed 47 accounts with GCI.

Sometime before February of 1989, Kimco had engaged the services of RCR, Inc., a licensed Indiana collection agency, to collect certain delinquent accounts. The compensation to be paid RCR for collecting was 35% on any amounts collected. On February 2, 1989, Hoffman directed RCR to forward a number of delinquent accounts to Webster for collection. RCR's letter to Webster and the enclosed "forwarding contract" specified that Webster was entitled to attorney fees equal to 30% of amounts collected with suit and 20% of amounts collected without suit. From February 2 through September 18, 1989, 26 cases were sent to Webster from RCR with the intention that suits would be filed thereon.

Attorney Jack Riddle had practiced in Fort Wayne and represented Kimco in a number of collection cases, on a contingent fee arrangement of 1/3 of the amounts collected. In 1989, Riddle moved from Fort Wayne, and as directed by Hoffman, he delivered files on 48 Kimco cases to Webster for collection.

---

1. The statement of facts required by Ind.Appellate Rule 8.3(A)(5) is a concise narrative summary of the facts in a light most favorable to the judgment. *Elsperman v. Plump,* 443 N.E.2d 1206 (Ind.Ct.App.1983). To have not received such an account from either party in the appeal of proceedings which produced a twelve volume record of an eleven day trial works a severe impediment upon timely appellate review.

On November 2, 1989, Webster wrote to Kimco advising that he expected to charge additional fees for the defense of counter claims over and above contingent commissions and fees. On January 23, 1990, Webster billed Kimco $50 for a retainer fee to defend a counter claim. On February 15, 1990, a Kimco employee managing its collections wrote to Webster stating that Kimco would not pay attorney fees for the defense of counter claims and that Webster should return all files if he would not work under those conditions. Webster wrote to Kimco advising that when Kimco terminated his services in any case, he would be entitled to be paid for services rendered on a quantum meruit basis. In September and December of 1990, Webster advised Kimco of his right to an attorney's lien for unpaid fees.

Webster and GCI continued to work on the Kimco collection cases. However, communications between Webster and Kimco evidenced continuing disagreement as to commission and fee matters. After the conclusion of a July 1990 appeal of a Kimco case, the relationship deteriorated, and Webster often ignored or failed to timely respond to telephone or written inquiries from Kimco. In the early part of the relationship, GCI sent Kimco statements reflecting activities on the accounts within the month in which funds were collected, but as fees became disputed, the statements became infrequent and even incomplete.

On October 5, 1992, Kimco brought an action against GCI and Webster alleging Kimco "[did] not believe that all of the money had and received by the Defendants ha[d] been properly accounted for and ... forwarded to Kimco after payment of appropriate attorney fees and collection costs." (R. A–4). GCI and Webster filed an answer of general denial and a counter claim alleging Kimco had failed to pay fees earned by Webster on the basis of quantum meruit and owed GCI and Webster more than $25,000.

A pretrial stipulation indicated that with respect to 62 Kimco accounts, no balance was due to either party. In the final pretrial order, the parties stipulated that "the successor in interest to Kimco Leasing, Inc. is RJH of Florida, Inc.," (R. A–142), and that the pleadings be amended "showing the successor plaintiff." (R. A–151). The order specified that the terms of the parties' agreement for fees and expenses, the value of services rendered which were not covered by express agreement, the amount of money collected, the amount of fees due and paid, and the conversion of funds belonging to Kimco were contested issues of fact. Shortly thereafter, trial to the bench began—continuing over the course of eleven days. Hundreds of exhibits were filed, and the record repeatedly indicates the judge's meticulous note-taking.[2]

After taking the matter under advisement because the judge "need[ed] to spend a lot more time on this case," (R. 2451), the trial court issued its findings of fact, conclusions of law and judgment. The 76 page document included 104 findings of fact. The court made findings as to what the fee arrangements were with respect to each of the various methods whereby cases were referred to GCI and Webster. Then the court made 55 findings on individual Kimco accounts[3]— specifying how the account was placed, with what entity, the fee arrangement, payment received, payment remitted to Kimco, any particular legal action taken, the amount due, and whether wrongful dominion and use over Kimco funds had been exercised. The conversion statute was cited, and the evidence of attorney fees incurred by Kimco noted.

The court concluded as a matter of law that the parties had no agreement about Webster's fees for certain kinds of legal services, that Webster was entitled to payment on a quantum meruit basis for having performed those services, that Webster had a duty to give his client a full accounting, and that GCI and Webster breached their agreement with Kimco to account. The court held Kimco had been "damaged in the amount of

---

2. The judge apparently used an indexed binder with a separate section for notes on evidence about each Kimco account.

3. The court found that on seven specific accounts "there was either no evidence introduced at trial or the evidence presented was insufficient to establish that any amounts were due to either party." (R. A–224).

$32,396.75," citing the 26 specific findings from which that conclusion was derived, and that "[a]t least $18,848.49" of that "involved the conversion of funds collected by Webster for payment of disputed attorney fees." (R. A–229).[4] The court then found Kimco was entitled to recover prejudgment interest incurred from "one month after any month in which the collection occurred" and computed those amounts for each of the accounts. (R. A–232). Finally, the court calculated Kimco's total recovery as follows:

(1) $56,545.47 (3 × $18,848.49) and

(2) $10,000.00 being reasonable attorney fees for Plaintiff's claim under [the conversion statute];

(3) Plus $13,548.26 representing the difference between the amount found due Kimco ($32,396.75) for breach of its agreement, and that attributable to conversion;

(4) Plus $15,470.17 prejudgment interest.

(R. A–233). Thereafter, the court found Kimco indebted to GCI and Webster for certain commissions and fees (which it broke down and attributed to specific factual findings), and computed prejudgment interest thereon, and found Kimco owed Webster a certain amount for fees earned on a quantum meruit basis (all of which the court also cited to specific factual findings). The court concluded that the "multitudinous factual and legal issues in this case and the manner in which it [was] submitted to the Court [were] extremely complex and time consuming." (R. A–238).

The court's judgment awarded Kimco a $95,563.90 recovery from GCI and Webster; and awarded GCI $3,120.28 on its counterclaim and Webster $10,263 on his counterclaim.

### DECISION

On appeal of claims tried by the court without a jury, we will not set aside the findings or judgment unless clearly erroneous, and we give due regard to the opportunity of the trial court to judge the credibility of witnesses. Ind.Trial Rule 52(A).

### 1. *Conversion*

The pretrial order declared "[c]onversion of funds belonging to Kimco" an issue for trial. (R. A–147). The trial court cited the following statutory provisions:

A person who knowingly or intentionally exerts unauthorized control over property of another commits criminal conversion, a Class A misdemeanor.

I.C. § 35–43–4–3.

If a person suffers a monetary loss as a result of a violation of I.C. 35–43, he may bring a civil action against the person who caused the loss for:

(1) an amount equal to three (3) times his actual damages;

(2) the costs of the action; and

(3) a reasonable attorney's fees.

I.C. 34–4–30–1.

Thereafter, the trial court made the following conclusions of law:

Webster's payments to himself of disputed, and not previously judicially established, attorney fees out of funds collected for Kimco without the consent and knowledge of Kimco constituted criminal conversions under I.C. 35–43–4–3.

That Webster had the requisite knowledge and intent to satisfy all the elements of the offense of conversion was established by the evidence of his thirty years experience in the collection business and repeated egregious behavior in failing and refusing to account to, or respond to inquiries by, Kimco as to funds which he or GCI held in their possession and which he or GCI was, without Kimco's permission or consent, applying to Webster's disputed attorney fees.

(R. A–231, 232).

■ GCI and Webster do not challenge the findings underlying the trial court's conclusions. They provide neither facts nor citations to the record about the *evidence* in this regard, but simply claim that "the trial

---

4. The court noted that it had "set off" from this amount "$5,361.28 also converted by Webster but applied by the Court" to accounts where the court "found Kimco owed additional sums for attorney fees." (R. A–231).

court committed reversible error in finding that [they] had converted assets of" Kimco. Appellants' Brief at 1. In effect, their argument is that the evidence is insufficient to support the verdict of the trial court. In addressing a claim of insufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Schultheis v. Franke,* 658 N.E.2d 932, 938 (Ind.Ct.App.1995), *trans. denied.* We consider only the evidence most favorable to the verdict, and if substantial evidence of probative value supports the verdict, it will not be set aside. *Id.*

GCI and Webster cite to *Coffel v. Perry,* 452 N.E.2d 1066, 1069 (Ind.Ct.App.1983) for the proposition that where the defendant "believed he was entitled to retain the [property wrongfully held] in satisfaction of a debt arising out of another [ ] transaction" with the plaintiff, there is no criminal conversion. In *Coffel,* the jury returned a verdict finding the defendant had committed tortious conversion but finding no criminal conversion. The trial court granted the plaintiff's motion to correct errors and entered judgment on the evidence on the criminal conversion count. Hence, we were applying the standard of review for judgment on the evidence *after a jury verdict,* and because that standard required consideration of only the evidence and reasonable inferences supporting the finder of fact's verdict, we reversed.

■ In the present case, after a lengthy bench trial, the finder of fact concluded criminal conversion had been committed, based upon detailed findings for each instance thereof. GCI and Webster essentially ask that we assess the credibility of witnesses and reweigh the facts. This we cannot do. After many days of trial and voluminous findings, the trial court found there was both knowing and intentional action by Webster, based on his long experience and repeated failure to provide certain information to Kimco, and that the application of funds collected on Kimco's behalf to disputed fees was "without Kimco's permission or consent." (R. A–232). The statute defines "unauthorized" as *inter alia* "without the other person's consent." I.C. § 35–43–4–1. The trial court's conclusion that all the elements of the criminal conversion offense had been satisfied is supported by sufficient evidence.

In a separate vein, GCI and Webster also argue that Webster had a claim of right to hold Kimco funds as an attorney lien. The trial court found that despite

> the fact that Webster's notice to Plaintiff of his claim of an attorney's lien was made long after he started withholding funds collected for Kimco and was not specific as to the accounts or amounts affected,

the lien was a valid one. (R. A–230). However, the court then stated that such a lien was passive and did not allow Webster "without the permission of his client or a judicial determination, [to] lawfully apply those funds in payment of the disputed attorney fees he claimed as if the funds were his own property." *Id.*

GCI and Webster argue that pursuant to the authority of *Bennett v. NSR, Inc.,* 553 N.E.2d 881 (Ind.Ct.App.1990), Webster held an "almost uncontrovertible" claim of right to retain any of Kimco's funds that came into his hands "professionally." Appellants' Brief at 10. *Bennett* concerned a motion to quash an order to produce, and is not authority for an attorney lien's constituting a complete defense to an action for criminal conversion as presented in the factual scenario before us. They further cite in their reply brief the statement in *State v. Hendricks Circuit Court,* 243 Ind. 134, 183 N.E.2d 331, 333 (Ind.1962), that "[a]n attorney has a right to apply money collected for his client upon the fees due him." Again, the authority is inapposite because in that case there was no dispute between the client and the attorney about the amount of the attorney fee, and the issue was whether an attorney could be held in contempt of a court order to pay over an entire sum received on a commissioner's sale of property to the client when the client had not paid the attorney fees owed. The critical distinction between those authorities and the present case is, as the trial court noted, that Webster had already treated the collected "funds as if [they] were his own property."

The trial court's conclusion that conversion had been committed is not clearly erroneous.

### 2. *Assignment*

■ GCI and Webster next claim that RJH of Florida, Inc. cannot be awarded punitive damages and attorney fees in this matter because *Hart Conversions, Inc. v. Pyramid Seating Co., Inc.*, 658 N.E.2d 129 (Ind. Ct.App.1995), held that claims for punitive damages are not assignable; and *Picadilly Inc. v. Raikos*, 582 N.E.2d 338 (Ind.1991), held that a malpractice claim is likewise not assignable. The trial court distinguished *Picadilly* because the instant case did not involve a suit on behalf of a party who was an adversary in the underlying litigation and the *Picadilly* public policy concerns were not applicable here. The trial court then distinguished *Hart Conversions*, noting that the "instant case does not involve a successor in interest who is a stranger to the claim for the funds and pecuniary losses suffered." (R. A–235).

The trial court found Kimco Leasing, Inc. "sold all its assets, including its claims against the Defendants, to Hoffman, Inc.," and subsequently Hoffman, Inc. "sold the said assets" to RJH of Florida, Inc., which then operated in Fort Wayne "under the name of Kimco Leasing." (R. A–164). The court further found Richard J. Hoffman "was the sole shareholder, director and officer" of all three corporations, (R. A–165), and the corporations conducted business of the same nature from the same place. Citing *Mishawaka Brass Mfg. v. Milwaukee Valve Co.*, 444 N.E.2d 855 (Ind.Ct.App.1983), the trial court concluded the successor corporation was "a direct continuation of" its predecessors and "should have the same rights and liabilities." (R. A–236).

In *Mishawaka Brass*, we held that the record supported the trial court determination that one corporation was "a direct continuation" of another corporation with which the plaintiff conducted the underlying transaction, because both were wholly owned by the same individual, had virtually the same officers and directors, operated on the same business premises and conducted the same business. We held that "a direct continuation of the ownership and operations of the first corporation" with only a change of name "will not cut off liability to a creditor of the first corporation." 444 N.E.2d at 858.

GCI and Webster contend there was no evidence (1) that RJH of Florida, Inc. was the alter ego of Kimco Leasing, Inc., or (2) of Hoffman's status as sole shareholder, officer and director. Although Hoffman's trial testimony only implied these facts, specific substantiation can be found in Hoffman's deposition. That deposition was ordered "filed and [ ] published and made a part of the record" by the trial court. (R. 234).[5] The facts about the Hoffman corporations mirror those found in *Mishawaka Brass* to constitute one corporation's being a direct continuation of its predecessor and, therefore, standing in its shoes. The evidence supports the trial court's findings, and the court's conclusion that RJH of Florida, Inc. could be awarded punitive damages and attorney fees for this action under I.C. § 34–4–30–1 is not clearly erroneous.

### 3. *Evidence*

Finally, GCI and Webster contend the trial court "committed reversible error in admitting opinion testimony from a non-expert witness as to a basic issue in the case, namely the amounts owed back and forth between Plaintiff and Defendants." Appellants' Brief at 1. Specifically, this argument challenges the testimony of Cid Fick. Fick had been with Kimco for five years and was specifically trained and involved in the monitoring and collection of its delinquent accounts. She testified at length, on an account by account basis, about the life of each Kimco account placed with the defendants. Part of her testimony reflected documents which she had constructed showing her computations of what amounts were due and owing to whom based upon her understanding of what Kimco had agreed to pay GCI and Webster. She used information gleaned in discovery from the defendants, Kimco's records, billing statements, letters, and computer summaries to construct the documents, and performed basic mathematics to arrive at her computations.

---

**5.** Ind.Trial Rule 5(D)(5) provides that the filing of any deposition constitutes publication.

GCI and Webster objected to her testimony about "conclusion[s] and not … facts." (R. 417). The court stated that Fick was

hired to monitor delinquent accounts and to interact with the attorneys hired for collection of the delinquent accounts. She apparently has the files here for you to review if you have not already done so. I'll allow her to testify as to what her computation is.

(R. 417). The court then noted that given the volume of disputed accounts, the court lacked the time "to go through every one of these accounts on anything other than this basis," and stated that GCI and Webster would "have the opportunity to cross examine [Fick] from the documents" about which she testified. *Id.* Fick was indeed cross examined extensively.

 The admissibility of evidence is within the sound discretion of the trial court. *Owensby v. Lepper*, 666 N.E.2d 1251, 1254 (Ind.Ct.App.1996). We reverse a trial court's decision to admit evidence for an abuse of discretion only when it is clearly erroneous and against the logic and effect of the facts and circumstances of the case or the reasonable inferences to be drawn therefrom. *Id.* The reasonable inference drawn from the trial court's extensive findings [6] is that the court made its own conclusions, based upon the exhibits and testimony, as to what amount was owed to whom on each account. Further, admission of Fick's testimony about the records of the parties' transactions is not against the logic and effects of the facts and

circumstances in this action. Therefore, we find no abuse of discretion.[7]

■ We affirm.[8]

BAKER and FRIEDLANDER, JJ., concur.

---

6. We commend the trial court for its herculean efforts in this regard.

7. GCI and Webster make a final brief assertion that "the conclusion that Defendants failed to account to Kimco Leasing is clearly erroneous, in that the Record is replete with accountings." Appellants' Brief at 17. This matter did not appear in their Statement of the Issues. Having failed to either develop a cogent argument or present citation to authority, this issue is waived. *See* Ind.Appellate Rule 8.3(A)(7). Waiver notwithstanding, that it was possible to compile documentation in the nature of an accounting several years later does not constitute the timely accounting to clients which the court found lacking here, and the trial court's conclusion of a failure to account is not clearly erroneous.

8. Kimco requests that we award appellate fees pursuant to Ind.Appellate Rule 15(G), contending the overall tone of the appeal and its content show a "lack of merit and purpose of delay." Kimco's Brief at 17. We disagree. A strong showing is required to justify such an award, and the sanction is not imposed "to punish lack of merit unless an appellant's contentions and argument are utterly devoid of all plausibility." *Progressive Cas. Ins. Co. v. Morris*, 603 N.E.2d 1380, 1384 (Ind.Ct.App.1992). Although the appellants' contentions failed to prevail on appeal, we cannot say they were utterly devoid of all plausibility. Likewise, we find no indication of bad faith, harassment, or purpose of delay. Accordingly, we deny Kimco's request.