**Joel GARZA, Appellant–Plaintiff,**

v.

**Kevin D. LORCH, Troy D. Morgan and Kenneth R. Abbott, Appellees–Defendants.**

**No. 31A01–9804–CV–143.**

Court of Appeals of Indiana.

Dec. 29, 1998.

H. Lloyd Whitis, Corydon, Indiana, Attorney for Appellant.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, Indiana, Attorney for Appellee Lorch.

John B. Drummy, Rodney L. Scott, Kightlinger & Gray, New Albany, Indiana, Attorneys for Appellee Abbott.

## OPINION

BAKER, Judge

Appellant-plaintiff Joel Garza appeals from the trial court's grant of summary judgment in favor of appellees-defendants Kevin Lorch and Kenneth Abbott on his claims for declaratory judgment, fraud and negligence. Garza also appeals the trial court's award of attorney fees and expenses to Lorch and Abbott pursuant to IND.CODE § 34–1–32–1(b).[1] Additionally, Lorch and Abbott ask that we assess appellate attorney fees against Garza under App. R. 15(G).

### FACTS

The facts most favorable to Garza, an Indiana licensed real estate salesperson, reveal that on March 21, 1996, Garza entered into a Real Estate Purchase and Option Agreement with Troy Morgan. Pursuant to

---

1. This section has since been repealed and reco- dified at IND.CODE § 34–52–1–1.

this agreement, Morgan acknowledged a $60,000 debt to Garza and delivered a quitclaim deed for thirty acres of real estate in Harrison County, Indiana to satisfy this debt. The agreement and deed were drafted by Abbott, Morgan's attorney. Abbott did not include a legal description of the property in either document because Morgan was to have a survey conducted and the description later attached as Exhibit "A," as referred to in each document. Abbott had no contact with and provided no legal advice to Garza. Within fifteen days of the transaction, Garza received the exhibit containing the legal description. R. at 104. Upon receiving the description, Garza placed it in his desk with the other two documents. Garza never attempted to record the deed because he felt it was unnecessary as repayment of the loan was "right around the corner." Record at 105.

Several months later, on August 5, 1996, Morgan executed and delivered to Lorch a quitclaim deed for twenty-eight acres, a substantial portion of the property previously deeded to Garza. Prior to purchasing this real estate for $150,000, Lorch had a title search completed, obtained a title insurance policy and paid off all recorded liens. R. at 327, 347. Lorch recorded the deed on August 12, 1996. In December of 1996, while Garza was working on part of the property that he believed Morgan still owned but had actually been deeded to Lorch, Garza and Lorch had a conversation. Lorch informed Garza that he owned all of the property and Garza responded that he had a prior deed to some of it. Lorch replied, "Mine is recorded. Is yours?" R. at 161–62.

On December 12, 1996, Garza filed a declaratory judgment action against Lorch. Thereafter, Garza filed an amended complaint against Lorch, Morgan and Abbott on June 12, 1997. Garza's declaratory judgment claim against Lorch alleged that Lorch had constructive or actual notice of Garza's unrecorded deed and that the deed transfer from Morgan to Lorch was a fraudulent transfer in violation of IND.CODE § 32–2–7–17. Garza asserted a claim for fraud against Morgan.[2] Finally, Garza's claim against Abbott alleged attorney negligence in the preparation of the deed and agreement between Garza and Morgan without a legal description, making the documents allegedly incapable of being recorded.

On October 20, 1997, Abbott filed a motion for summary judgment. Lorch's response to Abbott's motion argued that Lorch was also entitled to summary judgment. A hearing was held on November 26, 1997 and, on December 23, 1997, the trial court granted summary judgment in favor of both Abbott and Lorch. Specifically, the trial court found, as to the claim against Abbott, that Garza had failed to establish that: 1) an attorney-client relationship existed between Abbott and Garza; 2) he was an intended third party beneficiary; and, 3) Abbott's actions caused damage to Garza. R. at 210. The trial court also found that Garza had provided no evidence that Lorch had actual or constructive knowledge of the unrecorded deed and no evidence that Lorch was not a bona fide purchaser for value. R. at 210. Thereafter, Abbott filed a motion for attorney fees on January 2, 1998 and Lorch filed a similar motion on January 5, 1998. After finding that Garza's claims against Abbott were frivolous, unreasonable and groundless, the trial court awarded $3,940 in attorney fees to Abbott on April 1, 1998. On April 13, 1998, the trial court also awarded $4,190 in attorney fees and costs to Lorch. Garza now appeals.

## DISCUSSION AND DECISION

### I. Summary Judgment

### A. Standard of Review

Our standard of review for a grant of summary judgment is well established. On appeal, we stand in the shoes of the trial court. *Harkness v. Hall,* 684 N.E.2d 1156, 1159 (Ind.Ct.App.1997). Summary judgment is only appropriate where the designated materials reveal that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Burnett v. Cincinnati Ins. Co.,* 690 N.E.2d 747, 749 (Ind.Ct.App.1998), *trans. denied.* We consid-

---

2. Morgan has not appeared or filed an answer in this cause and is not a party to this appeal.

er the facts in the light most favorable to the non-moving party, resolving any doubt in their favor. *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1065 (Ind.Ct.App. 1995), *trans. denied.* The trial court's grant of summary judgment is "clothed with the presumption of validity" and the non-moving party has the burden of demonstrating that the trial court erred. *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 595 (Ind.Ct.App.1996), *trans. denied.* Moreover, we will affirm the grant of summary judgment if it is based upon any legal theory which is consistent with the designated facts. *Wolfe v. Stork RMS–Protecon, Inc.*, 683 N.E.2d 264, 267 (Ind.Ct.App.1997).

## B. Claim Against Abbott

█ With regard to the attorney negligence claim against Abbott, Garza contends that the trial court erroneously granted summary judgment in favor of Abbott.[3] Specifically, in approximately three sentences, Garza makes a frail attempt to refute the trial court's finding that he failed to establish himself as an intended third party beneficiary.[4] Garza simply asserts that Abbott prepared the documents for Morgan to transfer the real estate as security for the loan, and, from this, we are asked to find evidence of an intended third party beneficiary and, therefore, that Abbott owed Garza a duty.[5] We are unpersuaded.

█ Moreover, even if we were to agree with Garza's slender argument that he was a third party beneficiary, Garza offers no argument that his damage was proximately caused by Abbott's failure to include a legal

description of the real estate in the documents.[6] Therefore, this issue is waived. *See Summit Account and Computer Service, Inc. v. RJH of Florida, Inc.*, 690 N.E.2d 723, 729 (Ind.Ct.App.1998), *trans. denied,* (failure to either develop a cogent argument or present citation to authority results in waiver of the issue); Ind. Appellate Rule 8.3(A)(7). Notwithstanding waiver, we find that as a matter of law, Abbott's alleged negligence in no way caused Garza's damage. Garza admits that he received the legal description of the real estate within fifteen days of accepting the quitclaim deed. R. at 104. After receiving the legal description, Garza had ample time, prior to Morgan's transfer to Lorch, to record the completed deed and to avoid all damage. Instead, Garza filed it in his desk drawer with the other documents because he felt there was no need to record the deed. Inasmuch as Garza brought about his own misfortune, the trial court properly granted summary judgment in favor of Abbott.

## C. Claim Against Lorch

█ Garza initially argues that the trial court improperly granted summary judgment in favor of Lorch in the declaratory judgment action because Lorch had either actual or constructive notice of Garza's unrecorded deed. When a deed is properly recorded, a subsequent purchaser is charged with constructive notice. *Altman v. Circle City Glass Corp.*, 484 N.E.2d 1296, 1298 (Ind.Ct.App. 1985), *trans. denied.* Here, Lorch could not be charged with constructive notice because Garza candidly admits that he failed to rec-

---

3. We note that Garza does not attempt to argue in his brief that an attorney-client relationship existed between himself and Abbott.

4. Garza cites *Walker v. Lawson*, 526 N.E.2d 968 (Ind.1988), without providing a pinpoint cite, for the general proposition that "[p]rivity is no longer a requirement in suits against attorneys by third party beneficiaries." Appellant's Brief at 9. After searching the opinion for any reference to "privity," we are at a loss. Moreover, we note that *Walker* concerned the rights of beneficiaries under a will to bring suit against the attorney who drafted the will, which is an entirely different situation than one party to a real estate transaction bringing suit against the other party's attorney with whom he had absolutely no con-

tact. *See Hacker v. Holland*, 570 N.E.2d 951, 955 (Ind.Ct.App.1991), *trans. denied,* (explaining that the interests involved in a real estate transaction are usually in opposition).

5. We reiterate the well-established rule that in order to recover under the theory of negligence, a plaintiff must establish that the defendant breached a duty owed to the plaintiff which was the proximate cause of the plaintiff's damages. *City of Portage v. Lindbloom*, 655 N.E.2d 84, 86 (Ind.Ct.App.1996), *trans. denied.*

6. Garza simply states that Morgan subsequently transferred the property to Lorch. Appellant's Brief at 10.

ord the deed. Therefore, Garza's claim would have to hinge on actual notice.

Actual notice has been defined by our supreme court as follows:

> [A]ctual notice has been divided into two classes, (1) express and (2) implied, which is inferred from the fact that the person charged had means of knowledge which he did not use. Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts.

*Mishawaka St. Joseph Loan & Trust Co. v. Neu,* 209 Ind. 433, 196 N.E. 85, 89–90 (Ind. 1935) (citations omitted); *see also Lamb v. Lamb,* 569 N.E.2d 992 (Ind.Ct.App.1991). Garza offers several facts which he claims support actual knowledge. These include: Lorch is a mortgage broker who knew of Morgan's credit history; Lorch obtained a real estate appraisal of $250,000 but only paid $150,000 for the property; Lorch accepted a quitclaim deed; Morgan had staked off the portion of the land intended to be transferred to Garza; Lorch and Garza had a conversation in December of 1996 regarding ownership of the land; and, Lorch's refusal to state his current appraisal of the real estate.[7] Appellant's Brief at 11–12.

■ We will address each of these in turn. First, the fact that Lorch is a mortgage broker who may have known of Morgan's financial history and who only accepted a quitclaim deed is irrelevant. Lorch took the necessary steps to assure his title by con-

ducting a title search and obtaining title insurance. Second, Garza places much emphasis on the price Lorch paid for the property as compared to the alleged appraisal. However, Garza offers no evidence in his brief that an appraisal for $250,000 ever existed.[8] He simply refers us to his amended complaint as proof of such. Appellant's Brief at 11. Moreover, his apparent, though undeveloped, argument that $150,000 is a grossly inadequate price for the twenty-eight acres which should have placed Lorch on notice is unsupported by the record, especially considering that Garza only paid $60,000 for thirty acres. Third, Garza stated in his deposition that Morgan had staked-off the portion of the property that he was deeding to Garza. R. at 158–60. However, there is no evidence in the record establishing whether the stakes were still present some four months later when Lorch purchased the property. Finally, the conversation between Garza and Lorch took place approximately nine months after the transaction between Garza and Morgan, and at least four months after Lorch obtained the property from Morgan. It offers no proof that Lorch knew of Garza's unrecorded deed prior to his transaction with Morgan. Garza even admitted in his deposition: "I don't know that he knew on August 5th. He might or might not have. But somewhere along the line between August 5th and December 24th, he knew." R. at 129. Based on these facts, we find as a matter of law that nothing in the record indicates that Lorch had knowledge of Garza's unrecorded interest in the property.

In addition to the notice argument, Garza asserts that the trial court erred in granting summary judgment in favor of Lorch on the fraudulent conveyance claim. Specifically, Garza baldly claims that the deed from Mor-

---

7. We note that Garza relies almost exclusively on his pleadings and his attorney's argument at the summary judgment hearing to support his notice argument.

8. Garza's assertion that Lorch refused to reveal the current appraisal value in his deposition is also irrelevant. Moreover, we note that although Lorch's deposition was designated to the trial court and both parties made reference to it at the summary judgment hearing and in their appellate briefs, Lorch's deposition has not been in-

cluded in the record for our review. We further note that on September, 25, 1998, Garza filed a motion to strike all references in Lorch's brief to the deposition. These references appear to be inconsequential. However, because we find that Garza has relied on the deposition in his brief, Appellant's Brief at 12, and he not only failed to object, but also used and quoted from Lorch's deposition during the summary judgment hearing, we deny the motion to strike. R. at 342, 349–51.

gan to Lorch was to avoid Garza's claims in violation of I.C. § 32–2–7–17.

Initially, we note that I.C. § 32–2–7–17 is the remedy section in the Indiana Fraudulent Transfer Act and, therefore, we assume that he intended to quote from the section that defines a fraudulent transfer as to present creditors, I.C. § 32–2–7–14. Because Garza's argument involved quoting, in its entirety, an inappropriate section of the code, without providing any independent analysis and failing to refer to any of the designated evidence to support his claim, we find that this issue is waived.[9] *See Tipmont Rural Elec. Membership v. Fischer,* 697 N.E.2d 83, 93 (Ind.Ct.App.1998) (failure to make a cogent argument by citing to relevant authority and the record may result in waiver).

■ Notwithstanding waiver, we note that there is no evidence of fraudulent intent. We have recently explained fraudulent intent in the context of fraudulent conveyances as follows:

> Fraudulent intent can be inferred from certain indicia called "badges of fraud." Some of the badges from which fraudulent intent can be inferred include: 1) the transfer of property by a debtor during the pendency of a suit; 2) a transfer of property that renders the debtor insolvent or greatly reduces his estate; 3) a series of contemporaneous transactions which strip the debtor of all property available for execution; 4) secret or hurried transactions not in the usual mode of doing business; 5) any transaction conducted in a manner differing from customary methods; 6) a transaction whereby the debtor retains benefits over the transferred property; 7) little or no consideration in return for the transfer; and 8) a transfer of property between family members. However, no one badge of fraud constitutes a per se showing of fraudulent intent.

*Lee's Ready Mix and Trucking, Inc. v. Creech,* 660 N.E.2d 1033, 1037 (Ind.Ct.App.

1996) (citations omitted). Here, the designated evidence in the record does not raise a question of material fact as to fraudulent intent. Specifically, there is no evidence that the transaction between Lorch and Morgan was out of the ordinary, as Lorch ran a title search, obtained title insurance and paid off all liens prior to the closing. Therefore, the trial court properly granted summary judgment on Garza's declaratory judgment action against Lorch.

## II. Attorney Fees

■ Garza next challenges the trial court's award of attorney fees under I.C. § 34–1–32–1 to both Abbot and Lorch. I.C. § 34–1–32–1(b) provides as follows:

> In any civil action, the court may award attorney's fees as part of the cost of the prevailing party, if it finds that either party:
>
> (1) brought the action in defense of a claim or defense that is frivolous, unreasonable or groundless;
>
> (2) *continued to litigate the action or defense after the party's claim or defense became frivolous, unreasonable or groundless;* or
>
> (3) litigated the action in bad faith.

*Id.* (emphasis added). The decision of the trial court to award fees is reviewed under an abuse of discretion standard. *Nelson v. Marchand,* 691 N.E.2d 1264, 1269 (Ind.Ct. App.1998).

■ Further, our supreme court has noted that commencing an action will less often be frivolous, unreasonable or groundless than continuing to litigate the same action, because investigation through pretrial discovery may be necessary to evaluate the claims. *Kahn v. Cundiff,* 543 N.E.2d 627, 629 (Ind. 1989). In such cases, counsel is expected to determine expeditiously the propriety of continuing such litigation and to dismiss promptly claims found to be frivolous, unreasonable or groundless.[10] *Id.*

---

9. Garza appears to argue that Lorch waived the issue of the alleged fraudulent conveyance by not addressing it in the summary judgment hearing. We disagree. Lorch clearly argued that there was no evidence of a fraudulent conveyance,

specifically pointing out that all known creditors were paid at the closing. R. at 346–48.

10. The supreme court adopted our opinion in *Kahn* which laid forth definitions for frivolous,

## A. Abbott's Attorney Fees

■ Garza argues that his negligence claim was not frivolous, unreasonable or groundless because he was simply requesting the trial court to extend the third party beneficiary doctrine. Even assuming that this would constitute a rational argument for extension, Garza still overlooks the fact that the lack of a legal description in the transfer documents in no way caused his damage. Garza is solely responsible because he never attempted to record the deed. This lack of causation became evident during Garza's deposition on August 27, 1997. In his deposition, the following discourse took place concerning when Garza received a copy of the legal description and whether he recorded the deed:

Q. Do you know when you got [the legal description]?

A. Not exactly, no. It might've been the next day or two or three days afterwards. I don't know exactly.

Q. But it was within a week of this transaction?

A. I could not bet on that. It was in that—I would say it was within 15 days, I would say. I could be wrong. It might've been the next day or the day after that or somewhere in there.

. . . .

Q. When you ultimately received the legal description, what did you do with it?

A. I put it in my desk.

Q. And was that where you had kept the Quitclaim Deed?

A. Yes.

Q. And that's where you kept the Loan Agreement?

A. Yes.

Q. Did you ever attempt to file the Quitclaim Deed with the [County Recorder]?

. . . .

A. Never did, no.

Q. And why not?

A. I had—The loan was supposedly right around the corner, and I figured why go through all this, I'll get my money back and we don't need this paperwork.

R. at 103–05. Moreover, Garza admitted in his deposition that he never received any advice from Abbott and could not even recall ever talking with him. R. at 155, 83. Immediately following the deposition, Abbott's attorney sent a letter to Garza's attorney demanding, pursuant to I.C. § 34–1–32–1, that Garza voluntarily dismiss the negligence claim, with prejudice. Specifically, after explaining how the deposition established a lack of duty, the letter went on to address the "insurmountable causation problems." R. at 362–63. The letter closed as follows:

While I have substantial questions about the basis for the original filing, it is now clear that Garza's claims against Ken Abbott are frivolous, unreasonable and groundless. If you continue to litigate this action, we will be entitled to recover attorney's fees in defending this action from this point forward. This will include a motion for summary judgment which will be filed within 60 days of the date of this letter. If we have not received the voluntary dismissal within 30 days, we will aggressively begin to seek a favorable judgment with all available speed and means.

Instead of heeding this generous warning, Garza chose to maintain his action after it became frivolous, unreasonable and groundless all the way through summary judgment and on to this court. As has been noted above, Garza has presented virtually no argu-

unreasonable and groundless. Our opinion explained these terms as follows:

[A] claim or defense is "frivolous" (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.

[A] claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified.

[A] claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party.

*Kahn v. Cundiff*, 533 N.E.2d 164, 170–71 (Ind.Ct. App.1989), *adopted* 543 N.E.2d 627 (Ind.1989).

ment on appeal as to why we should extend the third party beneficiary doctrine and has completely ignored the issue of causation. Therefore, we not only find that the trial court properly awarded attorney fees to Abbott, but we also grant Abbott's request for appellate attorney fees pursuant to our authority under Ind. Appellate Rule 15(G).[11] *See Hyundai Motor Co. v. Stamper,* 651 N.E.2d 803, 810 (Ind.Ct.App.1995) (Appellate attorney fees may be awarded by this court when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.")

### B. Lorch's Attorney Fees

■ Garza also challenges the trial court's award of attorney fees and costs to Lorch. Specifically, Garza argues that his claims against Lorch were not frivolous, unreasonable or groundless because he set forth facts that raised a reasonable inference that Lorch had actual or constructive notice of the prior deed and he asserted a claim for relief pursuant to the Indiana Uniform Fraudulent Transfer Act.

Initially, we note that asserting a claim under the Act is all that Garza has done. He has designated no evidence nor made any argument as to how the transaction between Lorch and Morgan was a fraudulent transfer. Moreover, the "facts" that Garza relies on to establish notice are unreasonable and are based entirely on his counsel's or his own unsupported assertions. Maintenance of this lawsuit became frivolous, unreasonable and groundless at least at the point of discovery. Following discovery, it was evident that Garza chose not to record his deed and that Lorch ran the proper title search, obtained title insurance and paid off all recorded liens on the property. Further, as we noted above, Garza even admitted in his deposition: "I don't know that he knew on August 5th. He might or might not have. But somewhere along the line between August 5th and December 24th, he knew." R. at 129. Based on these facts, we find that the trial court did not abuse its discretion in awarding attorney fees and costs to Lorch. Moreover, because Garza has offered nothing of substance to us in support of his claims and his appeal is meritless and frivolous, we similarly grant Lorch's request for appellate attorney fees in accordance with App. R. 15(G).

### CONCLUSION

In light of our resolution of the issues set forth above, we conclude that the trial court properly granted summary judgment in favor of Abbott on the attorney negligence claim because Garza caused his own damages by not recording the deed. We also find that the trial court properly granted summary judgment in favor of Lorch on Garza's declaratory judgment action because there was no designated evidence of actual or constructive notice or a fraudulent transfer. Moreover, we hold that the trial court did not abuse its discretion in granting attorney fees and costs to Abbott and Lorch for maintenance of a frivolous, unreasonable and groundless lawsuit. Finally, we grant appellate attorney fees to Abbott and Lorch pursuant to App. R. 15(G), as shall be calculated and executed by the trial court upon remand.

Judgment affirmed and cause remanded for further proceedings consistent with this opinion.

GARRARD, J., and ROBB, J., concur.

---

11. App. R. 15(G) provides that:
   If the court on appeal affirms the judgment, damages may be assessed in favor or the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution.