(No. 82444.—

KLEINWORT BENSON NORTH AMERICA, INC., Appellant, v. QUANTUM FINANCIAL SERVICES, INC., Appellee.

*Opinion filed February 20, 1998.*

J. Andrew Langan and James J. Boland, of Kirkland & Ellis, of Chicago, for appellant.

Anton R. Valukas, Charles B. Sklarsky, Brian W. Bilcer, Laura A. Kaster and Janice A. Hornaday, of Jenner & Block, of Chicago, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

The issue presented here is whether punitive damages can be recovered by assignees after a common law fraud claim brought by a corporation has been assigned by the corporation to its former shareholders. The corporation in this case is Quantum Financial Services, Inc. (Quantum). As part of a declaratory judgment action filed in the circuit court of Cook County, Quantum filed several counterclaims, including a fraud claim, against Kleinwort Benson North America, Inc., Kleinwort Benson Ltd., and Marcus Hutchins (collectively, Kleinwort). Quantum later assigned these counterclaims to the former shareholders of Quantum. The appellate court held that the former shareholders, as assignees, could seek punitive damages on the assigned fraud claim. 285 Ill. App. 3d 201. This court allowed Kleinwort's petition for leave to appeal (166 Ill. 2d R. 315). We affirm the appellate court.

## BACKGROUND

For the limited purpose of this appeal, the underlying allegations of the common law fraud claim are not

disputed. At this stage of the proceeding, Kleinwort accepts the allegations as true. In order to provide a more complete understanding of the litigation, we provide a summary of the factual background of the case. We address only those facts necessary to resolve the issue raised by the parties.

Quantum is a futures commissions merchant. In 1991, Quantum became interested in purchasing Virginia Trading Corporation (VTC), a brokerage firm. At the time, VTC was owned by Kleinwort. On May 31, 1991, Quantum offered to purchase 100% of the stock of VTC for roughly $6 million in cash and commissions. Kleinwort accepted. The parties executed a stock purchase agreement on June 30, 1991, wherein Quantum agreed to purchase all of the stock of VTC. The closing date was set for July 31.

Before the closing, two of VTC's salesmen left VTC, taking some of their accounts with them. According to Quantum, these departures drastically reduced the value of VTC. Quantum allegedly learned of the departure of one of these salesmen after the closing. By this time, Quantum had already paid nearly $6 million to Kleinwort in connection with the purchase. The departures form the crux of the litigation in the circuit court.

On August 14, 1992, Kleinwort filed a complaint against Quantum. For the purpose of this appeal, the pertinent allegations of the complaint sought a declaratory judgment to establish that Kleinwort had not breached the stock purchase agreement or made a material misrepresentation regarding the departures of the two VTC salesmen. In response, on October 26, 1992, Quantum filed an answer and counterclaims. The pertinent counterclaim was a claim alleging common law fraud and seeking both compensatory and punitive damages.

On January 14, 1994, while the action was pending

in the circuit court, all of Quantum's outstanding stock was sold by its two shareholders, Leslie Rosenthal and J. Robert Collins. At the time of this stock sale, Quantum's rights in this litigation were assigned by written agreement to former shareholders Rosenthal and Collins, individually. Quantum agreed to cooperate fully with the assignees in the prosecution and defense of the litigation. Thus, after the assignment, former shareholders Rosenthal and Collins, as assignees of Quantum, became the real parties in interest in the litigation.

In 1995, Kleinwort filed a motion for summary judgment. The circuit court granted summary judgment in favor of Kleinwort on all of Quantum's pending counterclaims, including the fraud counterclaim. This ruling disposed of all pending counterclaims assigned by Quantum to Rosenthal and Collins. The remainder of the action was dismissed as moot. Quantum appealed.

The appellate court reversed the circuit court's order of summary judgment in favor of Kleinwort and remanded the matter to the circuit court for further proceedings on all of the counterclaims. The appellate court also allowed Quantum's assignees to seek punitive damages on the common law fraud counterclaim. The court briefly stated that assignees of fraud claims have been allowed to seek punitive damages. 285 Ill. App. 3d at 213. The only issue appealed to this court is whether the assignees can recover punitive damages on the common law fraud counterclaim.

## ANALYSIS

In the instant appeal, the primary facts are not in dispute and the parties raise a question of law. Accordingly, our review is *de novo*. See *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997); *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996).

Kleinwort does not contest the assignment of the underlying common law fraud claim and the assignees'

right to recover compensatory damages if the allegations should be proven. Kleinwort only contests the right of the assignees of the underlying fraud claim to recover punitive damages following such an assignment. Kleinwort argues that the assignees may not seek punitive damages after an assignment for two reasons. First, Kleinwort argues that, in order to determine if an action is assignable, this court must determine if an action would have survived the death of the claimant such that it could be pursued by the claimant's estate. Kleinwort argues that punitive damages do not survive the death of a claimant and therefore they are not assignable. Second, Kleinwort argues that, even assuming that punitive damages survive, the assignment of punitive damages should not be allowed because to do so would violate public policy.

## I. Survivability

At common law, many actions were neither assignable nor survived the death of a claimant. Eventually, however, the law in this area changed and provided that certain actions would survive the death of a claimant and pass to the claimant's estate. Annotation, *Assignability of Claim in Tort for Damage to Personal Property*, 57 A.L.R.2d 603, 605 (1958). In turn, the personal representatives of a decedent were essentially perceived as assignees of the decedent's property. *North Chicago Street R.R. Co. v. Ackley*, 171 Ill. 100, 105 (1897); 57 A.L.R.2d at 605. Thus, historically, survivability and assignability were treated similarly because, in both instances, a claim was being transferred from one entity to another. Based on this historical development, in determining assignability, this court has considered whether the action would survive the death of the owner. See *Wilcox v. Bierd*, 330 Ill. 571, 585 (1928), *overruled on other grounds, McDaniel v. Bullard*, 34 Ill. 2d 487 (1966); *Olson v. Scully*, 296 Ill. 418, 422 (1921); *Sel-*

*den v. Illinois Trust & Savings Bank,* 239 Ill. 67, 78 (1909); *Ackley,* 171 Ill. at 105.

Kleinwort argues that punitive damages would not have survived the death of the claimant. Kleinwort relies on the Survival Act, which was codified at section 27—6 of the Probate Act of 1975 at the time this action was filed (755 ILCS 5/27—6 (West 1994)). The Survival Act provided:

> "In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, *actions for fraud or deceit,* and actions provided in Section 6—21 of 'An Act relating to alcoholic liquors.'" (Emphasis added.) 755 ILCS 5/27—6 (West 1994).

Under the Survival Act, most causes of action, including fraud actions, survive the death of a person. The estate may bring such actions on the decedent's behalf.

Although the Act does not address punitive damages explicitly, this court has held, in three cases involving personal injury claims, that punitive damages do not generally survive under the Survival Act. See *Ballweg v. City of Springfield,* 114 Ill. 2d 107 (1986); *Froud v. Celotex Corp.,* 98 Ill. 2d 324 (1983); *Mattyasovszky v. West Towns Bus Co.,* 61 Ill. 2d 31 (1975). In *Mattyasovszky,* 61 Ill. 2d at 33-34, this court stated that recovery under the Survival Act has historically been limited to compensatory damages and that the language of the Survival Act and decisions construing it have emphasized the compensatory nature of the damages available. But see *National Bank v. Norfolk & Western Ry. Co.,* 73 Ill. 2d 60 (1978) (punitive damages could be recovered under Survival Act because the underlying action was predicated on an act, the Public Utilities Act,

that specifically authorized the recovery of punitive damages). This court further stated that any expansion of the Survival Act to allow the survival of punitive damages is the responsibility of the legislature and not the courts. *Ballweg*, 114 Ill. 2d at 117-18; *Froud*, 98 Ill. 2d at 335.

In response, Quantum and the assignees (hereinafter, the assignees) raise two arguments. First, they argue that the cases involving the Survival Act all involved personal injury claims and the holdings of those cases should be limited to personal injury claims. The assignees do not ask that we reconsider the underlying reasoning of these cases or their interpretation of the Survival Act, and we do not address their logic and continuing viability at this time.

Second, the assignees argue that the Survival Act should not apply. Under a survivability analysis, the pertinent inquiry is whether punitive damages would survive the death of the original claimant. In the instant case, the entity originally bringing the fraud claim was Quantum, a corporation. Claims by and against corporations are governed by a different statute, for purposes of survival, than are claims by and against individuals. The Survival Act is part of the Probate Act; it does not apply to corporations. Thus, the assignees argue that the more appropriate inquiry in the instant case is whether a claim for punitive damages survives the dissolution of the corporation under the Business Corporation Act of 1983.

Section 12.80 of the Business Corporation Act of 1983 specifically governs the survival of remedies upon the dissolution of a corporation. It provides, in pertinent part:

> "*The dissolution of a corporation \*\*\* shall not take away nor impair any civil remedy available to or against such corporation,* its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to

such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution." (Emphasis added.) 805 ILCS 5/12.80 (West 1994).

This type of statute is called a corporate survival statute. *People v. Parker*, 30 Ill. 2d 486, 489 (1964); see also *Poliquin v. Sapp*, 72 Ill. App. 3d 477, 481 (1979); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1188-89 (7th Cir. 1980). It extends the life of a corporation in order to allow suits to be brought by or against a corporation. *Blankenship v. Demmler Manufacturing Co.*, 89 Ill. App. 3d 569, 574 (1980); *Poliquin*, 72 Ill. App. 3d at 481. These suits would otherwise abate. *Blankenship*, 89 Ill. App. 3d at 574; *Poliquin*, 72 Ill. App. 3d at 481. The plain language of the statute provides that all civil remedies available to a corporation survive dissolution.

Although the Survival Act, as contained in the Probate Act, has been interpreted to prohibit punitive damages, the assignees argue that corporations are treated differently pursuant to the Business Corporation Act of 1983. They argue that, in determining the assignability of punitive damages, the proper approach is to determine whether a claim would survive a corporation's dissolution.

A few courts have addressed survivability in determining whether punitive damages may be recovered following an assignment. They have reached opposite conclusions. In *Grunloh v. Effingham Equity, Inc.*, 174 Ill. App. 3d 508 (1988), a corporation attempted to assign its claim for property damage to certain third parties. The appellate court noted that, under the Business Corporation Act of 1933, "a corporation has power '[t]o sell and convey, mortgage, pledge, lease as lessor, and otherwise dispose of all or any part of its property and assets.'" *Grunloh*, 174 Ill. App. 3d at 518, quoting Ill. Rev. Stat. 1981, ch. 32, par. 157.5(e). This power to

dispose of property includes generally the power to assign a cause of action to others. *Grunloh*, 174 Ill. App. 3d at 518. The *Grunloh* court, however, then determined that punitive damages could not be recovered even though the underlying property damage claim itself could be assigned. See *Grunloh*, 174 Ill. App. 3d at 518-19. The appellate court based its conclusion on the fact that punitive damages are not recoverable under the Survival Act. Although the court acknowledged the corporate survival statute, it nevertheless applied the cases that had construed the Survival Act, which is part of the Probate Act.

The federal court, however, reached the opposite result in *Federal Deposit Insurance Corp. v. W.R. Grace & Co.*, 691 F. Supp. 87 (N.D. Ill. 1988), *aff'd in part & rev'd in part on other grounds*, 877 F.2d 614 (7th Cir. 1989). In *Grace*, a bank assigned its fraud claim to the Federal Deposit Insurance Corporation. The federal court held that a fraud action, which included punitive damages, could be assigned in its entirety. The court distinguished the cases interpreting the Survival Act on the basis that they all involved personal injury claims. The court stated that, for the purpose of assignability, Illinois generally distinguishes between torts to the person, which are not assignable, and torts to property, which are assignable. *Grace*, 691 F. Supp. at 92. The *Grace* court found that fraud claims are assignable. The court then noted that punitive damages "are a type of relief which is part and parcel of the underlying cause of action and do not constitute an independent basis of recovery." *Grace*, 691 F. Supp. at 92, citing 1 J. Ghiardi & J. Kircher, Punitive Damages Law & Practice ch. 6, § 6.16, at 67 (1988). Thus, when the fraud action was assigned, the corresponding punitive damages were transferred as part of the assignment.

After considering these survival statutes and cases,

we decline to apply the survival analogy to the instant case. As stated in *Grace*, punitive damages are a component of the relief available in an action and are therefore deemed a part of the underlying action. Punitive damages are a type of relief, not an independent cause of action. *Kemner v. Monsanto Co.*, 217 Ill. App. 3d 188, 199 (1991); *McGrew v. Heinold Commodities, Inc.*, 147 Ill. App. 3d 104, 110 (1986). This court long ago used the survival analogy when considering whether a cause of action is assignable, not whether punitive damages standing alone are assignable. This court has not applied the survival analogy to invalidate part of an assignment where the parties sought an assignment of the entire action.

In addition, application of the survival analogy to assignments may lead to unusual results. It would make little sense to create one assignment rule for corporations and a different rule for individuals based on the language and construction of different survival statutes. The survival analogy does not provide a principled analysis to determine if punitive damages are assignable in different situations involving different types of assignors and claims.

## II. Public Policy

A more significant consideration in determining the assignability of causes of action in general has been whether such assignments would violate public policy. This court has held that a cause of action cannot be assigned if such assignment violates public policy, even if such an action would otherwise survive the death of the owner. See *Ackley*, 171 Ill. 100 (personal injury actions and other actions of a personal nature are not assignable, even though such actions survive the death of the owner). Courts have considered public policy in determining if an action is assignable. See *Puckett v. Empire Stove Co.*, 183 Ill. App. 3d 181, 191-92 (1989) (assign-

ment of contribution action does not violate public policy); *Daugherty v. Blaase*, 191 Ill. App. 3d 496 (1989) (insurance malpractice claim is assignable because the business relationship between an insurance broker and a client is not personal); *Christison v. Jones*, 83 Ill. App. 3d 334 (1980) (legal malpractice claim is not assignable because of the personal nature of the attorney-client relationship); see also *Town & Country Bank v. Country Mutual Insurance Co.*, 121 Ill. App. 3d 216, 218 (1984).

Today, assignability is the rule and nonassignability is the exception. 6 Am. Jur. 2d *Assignments* §§ 7, 29 (1963). Basically, in Illinois, the only causes of action that are not assignable are torts for personal injuries and actions for other wrongs of a personal nature, such as those that involve the reputation or feelings of the injured party. See *Ackley*, 171 Ill. at 111. These limitations are based primarily on public policy concerns. Similarly, we find that the question of whether punitive damages may be recovered following an assignment should be determined primarily by public policy.

Kleinwort argues that the agreement, in which Quantum assigned its rights in the litigation to its former shareholders, violates public policy to the extent it allows the assignees to seek punitive damages. Kleinwort argues that such assignments would allow a litigious person to harass and annoy others by purchasing and pursuing such claims. Kleinwort argues that punitive damages would become a "commodity in trade" in Illinois. According to Kleinwort, allowing such assignments would encourage private wars between strangers for the purpose of obtaining the windfall of punitive damage awards. Kleinwort relies primarily on *Ackley*, 171 Ill. at 111, in which this court held that personal injury actions were not assignable based on public policy. Kleinwort equates punitive damages with personal injury claims. Kleinwort argues that punitive

damages are generally disfavored in the law and should not be recoverable following an assignment.

Some general principles that determine when an agreement between parties violates public policy follow. The public policy of Illinois is found in its constitution, its statutes, and the decisions of its courts. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989); *Roanoke Agency, Inc. v. Edgar*, 101 Ill. 2d 315, 327 (1984); *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 71-72 (1983). In deciding whether an agreement violates public policy, courts determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest. *O'Hara*, 127 Ill. 2d at 342. The courts apply a strict test in determining when an agreement violates public policy. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 683 (1983). The power to invalidate part or all of an agreement on the basis of public policy is used sparingly because private parties should not be needlessly hampered in their freedom to contract between themselves. *First National Bank v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 359 (1997). Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case. *O'Hara*, 127 Ill. 2d at 341-42; see also *Telenois, Inc. v. Village of Schaumburg*, 256 Ill. App. 3d 897, 901 (1993); *Laughlin v. France*, 241 Ill. App. 3d 185, 197 (1993).

Based on the facts and circumstances of the instant case, allowing the assignees to seek punitive damages does not violate any public policy. The assignees, Rosenthal and Collins, were Quantum's shareholders at the time of the alleged fraud. Rosenthal was intimately involved in the negotiations for the purchase of VTC, which serves as the basis for the alleged fraud. Con-

trary to Kleinwort's arguments, Rosenthal and Collins did not shop around for the fraud claim. They were involved in the litigation long before Quantum's claims were assigned to them. See *Puckett*, 183 Ill. App. 3d at 191-92 (assignment of contribution claim did not violate public policy where assignee was closely involved in the events leading up to the litigation).

In addition, we note that punitive damages generally serve to punish a wrongdoer and to deter the wrongdoer and others from committing similar acts in the future. See, *e.g.*, *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978). These purposes are served in the instant case whether Quantum seeks such damages or whether its assignees seek such damages. The same defendants are involved regardless of the assignment. Accordingly, the recovery of punitive damages following Quantum's assignment of the action to Rosenthal and Collins to the extent it allows the recovery of punitive damages does not violate public policy.

## CONCLUSION

We hold that the former shareholders of Quantum may properly seek punitive damages after Quantum's assignment of the fraud claim to them. For the foregoing reasons, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*