179 Cal.App.4th 633 (2009)
D.J. NELSON, as Trustee, etc., Plaintiff and Appellant,
v.
EXXON MOBIL CORPORATION, Defendant and Respondent.
COOK ENDEAVORS, Petitioner,
v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent,
EXXON MOBIL CORPORATION, Real Party in Interest.
Nos. C059615, C060271.
Court of Appeals of California, Third District.
November 20, 2009.
As modified November 30, 2009.
*636 Baron & Budd, Scott Summy, Celeste A. Evangelisti, John L. Yates, Carla M. Burke; Stevens, O'Connell & Jacobs, Charles J. Stevens, David A. Cheit, Bradley A. Benbrook; Sher & Leff, Victor M. Sher and Richard M. Franco for Plaintiff and Appellant and for Petitioner.
Sheppard Mullin Richter & Hampton, Jeffrey J. Parker, Whitney Jones Roy, Karin Dougan Vogel; Morgan Lewis & Bockius and David L. Schrader for Defendant and Respondent and for Real Party in Interest.
No appearance for Respondent.

OPINION
CANTIL-SAKAUYE, J.
In this consolidated proceeding, plaintiff and petitioner Cook Endeavors and its predecessor in interest, D.J. Nelson, as trustee for the D.J. Nelson Trust (the Trust), seek review of two orders of respondent Superior Court of Sacramento County: one granting the motion of defendant and real party in interest Exxon Mobil Corporation (Exxon) to substitute Cook Endeavors for the Trust as plaintiff in the underlying action; the other granting Exxon's motion for summary adjudication on Cook Endeavors's punitive damages claim.[1] The evidence presented to the superior court established that, during the pendency of this action, the Trust transferred all of its assets, including its interest in this lawsuit, to the Trust beneficiaries, who in turn transferred those assets to Cook Endeavors, a newly formed corporation of which the Trust beneficiaries are the sole shareholders. The superior court concluded the transfer of all assets to Cook Endeavors divested the Trust of standing to pursue this action. However, the court further concluded the Trust's punitive damages claim could not lawfully have been assigned to the corporation, Cook Endeavors.
Cook Endeavors and the Trust (hereafter plaintiffs) contend the superior court erred in one or the other of these rulings. Plaintiffs argue the court erred in concluding the punitive damages claim could not be transferred to Cook Endeavors, inasmuch as there was in fact no transfer of assets but merely a change in legal form of the single entity from a trust to a corporation. In the alternative, plaintiffs argue that if the punitive damages claim could not be *637 transferred to Cook Endeavors, then such claim was retained by the Trust, in which case the Trust should not have been substituted out of the action.
We conclude the punitive damages claim was properly transferred to Cook Endeavors under the circumstances and, therefore, the trial court erred in granting Exxon's motion for summary adjudication. Whether viewed as a transfer of assets or simply a change in the legal form of a single entity, any preexisting punitive damages claim held by the Trust was transferred, along with all other assets, to Cook Endeavors. We further conclude the Trust no longer has any interest in the action and the trial court properly granted Exxon's motion for substitution. We therefore affirm the judgment (order) substituting Cook Endeavors for the Trust but grant the petition for writ of mandate on the order granting summary adjudication of the punitive damages claim.

FACTS AND PROCEEDINGS
There is essentially no dispute over the facts of this matter. The dispute is over the legal impact of those facts.
In 1973, the Trust was created with Robert C. Cook as the settlor and his wife, Jane A. Cook, also known as D.J. Nelson (Nelson), as the trustee. The beneficiaries under the Trust were Nelson and the settlor's son, Robert C. Cook, Jr. (Cook), with Nelson receiving a life estate in the income from one-half the Trust assets and Cook receiving everything else. The Trust also provided for its termination and distribution of the Trust assets at the discretion of Cook, subject to continuation of the life estate in Nelson over one-half of the Trust assets.
The only asset of the Trust was a parcel of real property designated in the Trust agreement as parcel B. The Trust expressly prohibited the addition of other property to the Trust corpus. At the time the lawsuit was commenced in this matter, the Trust, doing business as Fruitridge Vista Water Company, was operating a business that supplied water to 4,800 homes in the Sacramento area utilizing the water underlying the Trust's real property.
In May 2001, the Trust initiated this action in the superior court against Exxon and others alleging contamination of its water supply with methyl tertiary butyl ether (MTBE) and tertiary butyl alcohol (TBA). The fifth amended complaint contained four causes of action: strict liability, negligence, trespass, and nuisance. In each cause of action, the Trust sought an award of punitive damages.
Cook Endeavors was incorporated on May 9, 2007. On June 5, 2007, Cook exercised his right to order distribution of the Trust assets to the beneficiaries. *638 Nelson, as trustee, transferred one-half of the Trust assets to Cook and the other half to Cook subject to a life estate in Nelson. The same day, Cook and Nelson transferred their interests in the Trust assets to Cook Endeavors, as part of the capitalization of that corporation. In exchange, Cook received 50 shares of stock in the corporation and another 50 shares subject to a life estate in Nelson.
On April 4, 2008, Exxon filed a motion to substitute Cook Endeavors for the Trust as plaintiff. Exxon asserted that by assigning all of its assets to Cook Endeavors, including its interest in this lawsuit, the Trust no longer has standing. In response, the Trust moved to amend the complaint to add Cook Endeavors as an additional plaintiff and to further clarify its strict liability claim. The Trust also submitted a proposed sixth amended complaint. At the hearing on the motions, the Trust informed the court that Exxon contends assignment of the Trust's interest in the lawsuit to Cook Endeavors eliminated punitive damages from the case because such claim cannot be assigned. The Trust argued that, to the extent this is true, it should be retained as a plaintiff to pursue the punitive damages claim itself. The trial court granted Exxon's motion to substitute and denied that portion of the Trust's motion to amend that sought to add Cook Endeavors as an additional plaintiff. The Trust appeals.
On June 24, 2008, Cook Endeavors, as sole plaintiff, filed a sixth amended complaint, this time against Exxon alone and containing only two causes of action, strict liability and negligence. The sixth amended complaint seeks punitive damages on each cause of action.
Exxon filed a motion for summary adjudication of the punitive damages claims. The trial court issued a tentative ruling, concluding Cook Endeavors cannot seek punitive damages in this action because this aspect of the Trust's claims against Exxon could not be assigned. On September 12, the court affirmed its tentative ruling. On October 30, 2008, Cook Endeavors filed a petition for writ of mandate in this court challenging this ruling.
We issued an alternative writ and consolidated the appeal and writ proceeding for purposes of argument and disposition. We also stayed all further proceedings in the superior court.

DISCUSSION

I.

Motion to Dismiss Appeal
Exxon moves to dismiss the Trust's appeal, arguing the order substituting Cook Endeavors for the Trust is interlocutory in nature and, therefore, any *639 appeal of that order must await final judgment in the action. The Trust responds that the order granting Exxon's motion to substitute constitutes a final judgment as to the Trust's rights in the action and therefore is appealable by the Trust. The Trust has the better argument.
(1) Although interlocutory orders are generally not appealable, "[i]t is settled that the rule requiring dismissal does not apply when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party." (Justus v. Atchison (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on another point in Ochoa v. Superior Court (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].) This exception to the general rule "better serves the interests of justice to afford prompt appellate review to a party whose rights or liabilities have been definitively adjudicated than to require him to await the final outcome of trial proceedings which are of no further concern to him." (Justus, at p. 568.)
Exxon cites two California Supreme Court decisions for the proposition that a substitution order is not appealable. However, those cases are inapposite. In Welsh v. Allen (1880) 54 Cal. 211, Levy was substituted as plaintiff for Welsh and Welsh appealed. On the defendant's motion to dismiss the appeal, Welsh argued the order was final as between him and the defendant. The court concluded otherwise. (Id. at p. 212.) In other words, the court did not conclude the order was not appealable despite the fact it was a final adjudication as to Welsh. Instead, the court concluded the order was not in fact a final adjudication as to Welsh.
In Grant v. Los Angeles etc. Ry. Co. (1897) 116 Cal. 71 [47 P. 872], Grant appealed from an order substituting him into the action as the plaintiff. The court concluded the order granting substitution is subject to review only upon final judgment of the action. (Id. at p. 72.) However, in Grant, it was the party substituted into the action that was appealing, not the party substituted out. Obviously an order substituting a party into an action is not final as to that party.
Upon substitution of Cook Endeavors for the Trust as plaintiff in this action, all rights of the Trust in the action were finally adjudicated. It would be contrary to the interests of justice to require the Trust to await the outcome of the litigation between Cook Endeavors and Exxon before appealing this ruling. We therefore deny Exxon's motion to dismiss the appeal.

II.

Preliminary Matters
In ruling for Exxon on both the motion to substitute and the motion for summary adjudication, the trial court concluded the assignment of assets from *640 the Trust to Cook Endeavors was actually two separate assignments, one from the Trust to the Trust beneficiaries and the other from the Trust beneficiaries to Cook Endeavors. The court concluded the punitive damages claim had been assigned to the Trust beneficiaries in the first step but had not been assigned to Cook Endeavors in the second. Hence, while the Trust was divested of all assets, the right to seek punitive damages did not reach the corporation, Cook Endeavors.
Plaintiffs contend there was only one assignment, from the Trust to Cook Endeavors. Hence, either the right to seek punitive damages was assigned to Cook Endeavors or it remained with the Trust. Plaintiffs further contend that, in reality, there was no assignment at all but a change in legal form of a single entity from a trust to a corporation. However, as will become clear in the next section, it does not matter if we view this transaction as a single or a bifurcated assignment. Nor does it matter if we view the transaction as a transfer of assets or a reorganization of the Trust into a corporation. Under any of these scenarios, any preexisting punitive damages claim held by the Trust was assumed by the corporation.
Before addressing the issue presented in this proceeding, it is helpful to note what is not at issue. We are not asked to decide whether the Trust ever had a valid punitive damages claim against Exxon. Cook Endeavors asserts a right to punitive damages in both its strict liability and negligence claims. In its motion for summary adjudication, Exxon argued that, under California law, a right to punitive damages cannot be assigned. Exxon did not argue there was no valid punitive damages claim to begin with. Thus, although Exxon now argues, in its return to the writ petition, that the Trust could not have assigned its right to seek punitive damages because it had no such right to pass on, that issue was not raised below and is not properly before us. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 407, p. 466; Planned Protective Services, Inc. v. Gorton (1988) 200 Cal.App.3d 1, 12-13 [245 Cal.Rptr. 790], disapproved on another point in Martin v. Szeto (2004) 32 Cal.4th 445, 451, fn. 7 [9 Cal.Rptr.3d 687, 84 P.3d 374].)
We requested that the parties brief the additional issue of whether a punitive damages claim from an injury to water is in the nature of an assignable injury to real property or an unassignable personal injury. In response, the parties agree we are dealing here with an assignable injury to real property, disagreeing only on whether any punitive damages claim associated with that injury is also assignable. Therefore, we need not further consider the issue of the nature of the injury.
Finally, throughout this opinion, when we refer to the Trust's claim for punitive damages, we do not mean to suggest the Trust had a separate cause *641 of action for punitive damages. As Exxon correctly points out, the right to punitive damages is merely a remedy that may attach to a particular cause of action. (See Hilliard v. A. H. Robins Co. (1983) 148 Cal.App.3d 374, 391 [196 Cal.Rptr. 117].) Our discussion of plaintiffs' punitive damages claim is merely a shorthand reference to their right to seek punitive damages on one or more of the causes of action in the complaint.

III.

Assignment of the Punitive Damages Claim
Turning to the merits of the case, Exxon contends California law, without exception, prohibits the assignment of claims for punitive damages. However, as we shall explain, the cases on which Exxon relies do not support such a blanket rule.
(2) In cases involving the assignment of choses in action, California generally follows a policy of free transferability. (Essex Ins. Co. v. Five Star Dye House, Inc. (2006) 38 Cal.4th 1252, 1259 [45 Cal.Rptr.3d 362, 137 P.3d 192].) "`[I]t is a fundamental principle of law that one of the chief incidents of ownership in property is the right to transfer it.' [Citation.] [¶] This `chief incident of ownership' applies equally to tangible and intangible forms of property, including causes of action." (Ibid.)
(3) "`[I]t is pretty generally held in America that the only causes or rights of action which are not transferable or assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims and rights of action whatever are generally held to be transferable. In conformity with the principle just stated the following demands, claims, and rights of action have been held to be assignable: causes of action arising from the breach of a contract of any kind (except the breach of a promise to marry); causes of action arising from torts which affect the estate rather than the person of the individual who is injured. Under the latter head are claims arising from the carrying away or conversion, of personal property, from the fraudulent misapplication of funds by the officer of a bank, from negligent or intentional injury done to personal property or upon real estate. In view of the general tendency to recognize the transferability of rights of action growing out of injuries done in respect of one's property or estate, it is somewhat curious to note that it is commonly held that the right of action for fraud and deceit is not assignable. But where property is obtained by deceit or fraudulent device of any sort, the cause of action is assignable, for here the injury is done in respect of the particular *642 property which is wrongfully acquired.'" (Wikstrom v. Yolo Fliers Club (1929) 206 Cal. 461, 463 [274 P. 959], italics omitted; see also Reichert v. General Ins. Co. (1968) 68 Cal.2d 822, 834 [69 Cal.Rptr. 321, 442 P.2d 377]; Jackson v. Deauville Holding Co. (1933) 219 Cal. 498, 502-503 [27 P.2d 643].)
Of course, the present matter does not involve the question whether a particular cause of action may be assigned. It is undisputed the Trust's causes of action against Exxon for negligence and strict liability were assigned to Cook Endeavors. The question is whether, in connection with the assignment of those causes of action, any associated right to seek punitive damages was assigned as well.
(4) In answering this question, it is well to remember that the right to punitive damages is not a cause of action in and of itself but an incident of a cause of action. (Gold v. Los Angeles Democratic League (1975) 49 Cal.App.3d 365, 373, fn. 3 [122 Cal.Rptr. 732].) It is the very essence of a cause of action that it gives rise to a right in the injured party to recover some type of relief.
We next review the cases relied upon by Exxon in support of its argument that the right to seek punitive damages is not assignable. One of the cases cited by Exxon in support of a blanket prohibition against the assignment of a right to seek punitive damages, notwithstanding the assignability of the underlying claim, is Essex Ins. Co. v. Five Star Dye House, Inc., supra, 38 Cal.4th 1252 (Essex). In Essex, the Supreme Court concluded that while claims for bad faith breach of an insurance contract are generally assignable, emotional distress and punitive damages associated with such claims are not. (Id. at p. 1263.) The court cited as support its earlier decision in Murphy v. Allstate Ins. Co. (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584] (Murphy), which concluded that while an insured may assign a cause of action against an insurer for breach of the duty to settle, those damages arising from the personal tort aspect of the cause of action, i.e., emotional distress and punitive damages, may not be assigned. (Id. at p. 942.)
Although the high court in both Essex and Murphy discussed the assignability of the right to seek particular types of damages, the issue presented was in reality one of the assignability of a particular type of claim. As recognized by the courts, a claim for bad faith breach of an insurance policy consists of both a contract and a tort claim. (See Archdale v. American Internat. Specialty Lines Ins. Co. (2007) 154 Cal.App.4th 449, 467, fn. 19 [64 Cal.Rptr.3d 632].) As we explained in Schlauch v. Hartford Accident & Indemnity Co. (1983) 146 Cal.App.3d 926, 931 [194 Cal.Rptr. 658], an insured may assign the breach of contract aspect of the bad faith claim but *643 not the tort aspect. Citing Murphy, supra, 17 Cal.3d 937 we stated: "`Case law has established the proposition that an insured who has suffered damages in excess of an insurance policy as a consequence of an insurer's bad faith failure to settle a claim may sue the insurer for breach of contract.' [Citation.] Under settled principles, however, the insurer's duty to settle runs to the insured and not to the injured claimant. Consequently Hartford owed no common law duty to plaintiff. [Citation.] Although the insured may assign his cause of action against the insurer for its breach of the duty to settle [citation], he cannot assign the personal tort aspect of that bad faith cause of action because that aspect is not assignable in California. [Citation.] Consequently, to the extent that plaintiff seeks damages against Hartford for emotional distress and punitive damage those damages could not have been predicated upon an assignment by the insureds." (Schlauch v. Hartford Accident & Indemnity Co., supra, at p. 931.)
(5) In other words, it is not the nature of the relief that prohibits a claim for emotional distress or punitive damages from being assigned. It is the nature of the underlying cause of action giving rise to that relief. Because emotional distress and punitive damages flow from the personal tort aspect of an insurance bad faith claim, they may not be assigned.
Another case on which Exxon relies for a blanket rule against assignment of punitive damages claims is French v. Orange County Inv. Corp. (1932) 125 Cal.App. 587 [13 P.2d 1046] (French). In French, the owner of real property was defrauded out of that property by the defendants and assigned its claim against the defendants to French. French filed suit and the jury awarded compensatory damages of $2,142.27. (French, supra, at pp. 589-590.) On appeal, French claimed a right to punitive damages as well. The Court of Appeal rejected the claim, explaining that punitive damages may be sought only by the injured party, not an assignee. (Id. at p. 591.)
In People v. Superior Court (Jayhill Corp.) (1973) 9 Cal.3d 283 [107 Cal.Rptr. 192, 507 P.2d 1400] (Jayhill), the California Supreme Court relied on French in rejecting an attempt by the Attorney General to seek punitive damages on behalf of all those in the state who were defrauded by various door-to-door sellers of encyclopedias and similar publications. (Id. at p. 286.) The court stated that, "in the absence of statute, exemplary damages are allowed only to the immediate person injured." (Id. at p. 287.)
Although French and Jayhill use broad language suggesting that all punitive damages claims are personal in nature and, hence, not assignable, the cases on which they relied suggest a narrower principle. The court in French indicated its ruling "appears to be harmonious in principle with the rule that `a bare right to file a bill in equity for fraud committed upon the assignor will *644 be denied because the transfer of such right is against public policy.'" (French, supra, 125 Cal.App. at p. 591, quoting Swallow v. Tungsten Products Co. (1928) 205 Cal. 207 [270 P. 366] (Swallow).) However, in Swallow, the high court drew a clear distinction between the transfer of a "bare right" to assert a claim for fraud and the transfer of a real or personal property interest coupled with the assignment of a claim for fraud associated with that property. (Swallow, supra, at p. 217.)
The following cases illustrate this distinction. In People v. Mullan (1884) 65 Cal. 396 [4 P. 348] (Mullan), a judgment had been entered against Mullan which affected title to certain real property and Mullan later conveyed the property to The Cucamonga Company. The Cucamonga Company moved to set aside the judgment for lack of proper service of the summons on Mullan. The high court concluded the corporation was in legal effect the assignee and legal representative of Mullan and had standing to pursue the motion under these circumstances. (Id. at p. 397.)
In Whitney v. Kelly (1892) 94 Cal. 146 [29 P. 624] (Whitney), a prior judgment among claimants to real property found the plaintiffs in that prior action to be the rightful owners. The defendants in that action thereafter assigned any rights they might have in the property to Whitney, who brought a new action to set aside the prior judgment on the basis of fraud. The trial court dismissed the action after sustaining the defendants' demurrers to the complaint, and Whitney appealed. (Id. at p. 147.)
The Supreme Court affirmed. Quoting from Story on Equity Jurisprudence, the court stated the following general rule: "`So an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor will be held void as contrary to public policy, and as savoring of the character of maintenance.... Indeed, it has been laid down as a general rule that where an equitable interest is assigned in order to give the assignee a locus standi in judicio in a court of equity, the party assigning such right must have some substantial possession and some capability of personal judgment, and not a mere naked right to overset a legal instrument or to maintain a suit.'" (Whitney, supra, 94 Cal. at p. 148.)
In Whitney, unlike Mullan where the property at issue was conveyed to the assignee, the defendants in the prior action had no interest in the property at issue at the time of the assignment to Whitney. All the assignors in Whitney had was a bare right to try and set aside the judgment that had found others to be the rightful owners. The high court in Whitney explained: "If plaintiff's grantors had nothing but a mere naked right to file a bill to set aside this judgment, then this plaintiff, their grantee, can have no title. It is essential that a party complaining in equity should have some present substantial *645 interest in the subject-matter of the suit. He must have a direct interest in the result of the litigation, and his complaint must clearly indicate that fact. The plaintiff here has no interest in this land, for his grantors had no interest when they transferred to him." (Whitney, supra, 94 Cal. at p. 151.)
In Swallow, it was asserted that, on June 19, 1922, Vaughn filed suit against Pine Creek Tungsten Company, the holder of certain mining rights. On July 17, 1922, Vaughn obtained a default judgment and, on March 29, 1923, purchased the mining rights pursuant to a writ of execution. Vaughn quitclaimed the mining rights to Swallow. In the meantime, on December 12, 1922, Pine Creek assigned its interest in the mining rights to Natural Soda Products Company, who in turn assigned its rights to Tungsten Products Company on March 14, 1923. (Swallow, supra, 205 Cal. at pp. 210-211.)
In a quiet title action brought by Swallow against Tungsten Products Company, Tungsten asserted Vaughn committed fraud in obtaining the earlier default judgment. The trial court granted judgment to Swallow and Tungsten appealed. (Swallow, supra, 205 Cal. at p. 211.) On appeal, Swallow argued Tungsten could not claim fraud in connection with the earlier default judgment because Tungsten was not a party to the action at the time of the alleged fraud. (Id. at p. 214.) The Supreme Court reversed. The high court rejected Swallow's argument that Tungsten had no standing to claim fraud in connection with the prior judgment as a mere assignee, distinguishing the matter from Whitney. According to the court, despite the existence of a judgment which created an apparent lien on the property, Pine Creek was the owner and in possession of the property at the time it was transferred to Natural Soda and Natural Soda was the owner and in possession when the property was transferred to Tungsten. Thus, Tungsten obtained a right to challenge the prior judgment as an incident to that property ownership. (Id. at pp. 218-219.)
(6) The foregoing cases stand for the proposition that a defrauded party is prohibited from assigning its right to assert such fraud in a legal proceeding except where such assignment is incident to the transfer of some real or personal property interest. This is consistent with long-standing policies against allowing the assignment of legal claims standing alone, while recognizing the free transferability of property interests, including associated legal claims.
Thus, when the Court of Appeal in French indicated its determination that punitive damages may not be sought by an assignee appears to be harmonious with the rule stated in Swallow, it is reasonable to assume it was incorporating the exception for claims incident to the transfer of a property interest. That is the situation presented here. The Trust did not merely transfer *646 to Cook Endeavors its right to seek redress from Exxon for contamination of its water supply. The Trust transferred its real property to Cook Endeavors, with the right to seek redress being incident to that property interest.
(7) Nevertheless, the parties cite no California appellate decision where, as here, the court considered whether a punitive damages claim incident to an otherwise assignable cause of action could itself be assigned. Although French itself involved the assignment of a fraud claim, and the court ruled punitive damages could not be recovered notwithstanding the recovery of compensatory damages by the assignee, the issue of whether the underlying fraud claim was assignable was not considered by the court. Cases are not authority for propositions not considered therein. (McKeon v. Mercy Healthcare Sacramento (1998) 19 Cal.4th 321, 328 [79 Cal.Rptr.2d 319, 965 P.2d 1189].)
Other states, however, have addressed this issue. In Federal Deposit Insurance Corp. v. W.R. Grace & Co. (N.D.Ill. 1988) 691 F.Supp. 87 (Grace), affirmed in part and reversed in part on other grounds (7th Cir. 1989) 877 F.2d 614, a bank assigned its fraud cause of action to the Federal Deposit Insurance Corporation and the federal district court held the fraud cause of action could be assigned in its entirety, including a claim for punitive damages. Applying Illinois law, the court distinguished prior cases finding no assignability where the claim involved personal injury rather than property damage. According to the court, Illinois, like California, generally distinguishes between nonassignable torts to the person and assignable torts to property. (691 F.Supp. at p. 92.) The court further concluded punitive damages "are a type of relief which is part and parcel of the underlying cause of action and do not constitute an independent basis of recovery." (Ibid.) Thus, when the fraud cause of action was assigned, the corresponding punitive damages claim went with it.
In Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc. (1998) 181 Ill.2d 214 [229 Ill.Dec. 496, 692 N.E.2d 269] (Kleinwort), Kleinwort sued Quantum and Quantum filed a counterclaim asserting fraud and seeking punitive damages in connection with the sale of a brokerage firm. During the pendency of the litigation, Quantum assigned its interest in the lawsuit to its two shareholders. Kleinwort argued the shareholders had no standing to pursue the punitive damages claim. (Id., 692 N.E.2d at pp. 270-271.) The Illinois Supreme Court disagreed. Relying in part on Grace, the court indicated "punitive damages are a component of the relief available in an action and are therefore deemed a part of the underlying action. Punitive damages are a type of relief, not an independent cause of action." (Id. at p. 274.)
*647 (8) In the present matter, as in Kleinwort and Grace, the claims assigned to Cook Endeavors involve assignable injuries to property rather than nonassignable personal injuries. Under these circumstances, the rule stated in French is inapplicable. As long as the causes of action themselves are assignable, which the parties do not dispute, any punitive damages claims associated with those causes of action are also assignable.
We reach this same conclusion for another reason as well. French and its progeny state that a claim for punitive damages may only be asserted by the person who received the injury. In this instance, the complaint alleges damage to real property. At the time the complaint was filed, title to that real property was held by the Trust on behalf of the Trust beneficiaries. As it stands now, title to the real property is held by Cook Endeavors on behalf of its shareholders, the very same Trust beneficiaries. Hence, although the form has changed, the identity of the parties allegedly injured by Exxon's actions has remained the same.
In Kleinwort, supra, 692 N.E.2d 269, the Illinois Supreme Court examined the public policies underlying the rule prohibiting assignment of punitive damage claims. The plaintiff had argued the assignment violated public policy because it "would allow a litigious person to harass and annoy others by purchasing and pursuing such claims." (Id. at p. 274.) According to the plaintiff, a claim for punitive damages "would become a `commodity in trade' in Illinois" and "would encourage private wars between strangers for the purpose of obtaining the windfall of punitive damage awards." (Id. at p. 274.) The Illinois high court disagreed, explaining: "Based on the facts and circumstances of the instant case, allowing the assignees to seek punitive damages does not violate any public policy. The assignees, Rosenthal and Collins, were Quantum's shareholders at the time of the alleged fraud. Rosenthal was intimately involved in the negotiations for the purchase of VTC, which serves as the basis for the alleged fraud. Contrary to Kleinwort's arguments, Rosenthal and Collins did not shop around for the fraud claim. They were involved in the litigation long before Quantum's claims were assigned to them." (Id. at p. 275.)
In Summit Account and Computer Service, Inc. v. RJH of Florida, Inc. (Ind.Ct.App. 1998) 690 N.E.2d 723 (RJH of Florida), Kimco Leasing entered into an agreement with GCI and GCI's attorney owner, Webster, whereby the latter would perform collection services on behalf of Kimco. Later, a dispute arose over the collection services and payment by Kimco. (Id. at pp. 724-725.) The matter was tried, and a net judgment was entered in favor of Kimco's successor in interest, RJH of Florida. (Id. at pp. 725-726.) On appeal, GCI and Webster argued, among other things, that RJH of Florida *648 could not be awarded punitive damages in the action because, under Indiana law, claims for legal malpractice and claims seeking punitive damages are not assignable. (Id. at p. 728.)
The Court of Appeal rejected the argument. The evidence presented at trial showed that Kimco sold all of its assets, including the claim against GCI and Webster, to Hoffman, Inc., and Hoffman, Inc., in turn sold all of the assets to RJH of Florida. However, Richard J. Hoffman was the sole shareholder of all three corporations and all three conducted the same business from the same location. (RJH of Florida, supra, 690 N.E.2d at p. 728.) The Indiana appellate court concluded RJH of Florida was a direct continuation of Kimco and could stand in its shoes for purposes of Kimco's claims against GCI and Webster. (Ibid.)
Likewise, in the present matter, Cook Endeavors is a direct continuation of the Trust, albeit in a different form, and can stand in its shoes for purposes of pursuing a claim for injuries to the property formerly owned by the Trust. As in Kleinwort, Cook and Nelson were the beneficiaries of the Trust at the time of the injuries and thereafter became the sole shareholders of Cook Endeavors. Neither Cook Endeavors nor Cook and Nelson shopped around for the claims asserted in this matter. Cook and Nelson have been involved all along. Allowing Cook Endeavors to pursue any punitive damages claim the Trust may have had will not unfairly prejudice Exxon and will not render such claims a commodity in trade. Where, as here, the policy reasons underlying a rule against assignment of claims are inapplicable, the rule should not be followed. (See Musser v. Provencher (2002) 28 Cal.4th 274, 285-287 [121 Cal.Rptr.2d 373, 48 P.3d 408].)
(9) In light of the fact the causes of action asserted in this matter involve injury to property rather than personal injury, the assignment of the punitive damages claim is incident to the transfer of real property from the Trust to Cook Endeavors, and Cook Endeavors is merely a continuation of the Trust in another form, we conclude Cook Endeavors is entitled to pursue whatever punitive damages claim may exist by virtue of the matters alleged in the complaint. The trial court erred in concluding otherwise.
Having so concluded, we necessarily find, as did the trial court, that the Trust no longer has any beneficial interest in this litigation and therefore was properly dismissed from the action.

DISPOSITION
In the appeal in case No. C059615, the judgment (order) substituting Cook Endeavors for the Trust as plaintiff in this action is affirmed. In case *649 No. C060271, the alternative writ, having fulfilled its purpose, is hereby dissolved. The stay issued by this court on December 4, 2008, shall be dissolved upon this opinion becoming final. A peremptory writ of mandate shall issue directing the superior court to vacate its order granting Exxon's motion for summary adjudication on Cook Endeavors's punitive damages claim and to enter a new order denying the motion. Cook Endeavors shall receive its costs on appeal (Cal. Rules of Court, rule 8.278(a)(1)), and in the writ proceeding (Cal. Rules of Court, rule 8.493(a)(1)(A)).
Sims, Acting P. J., and Nicholson, J., concurred.
NOTES
[1] Code of Civil Procedure section 437c, subdivision (f)(1) provides as pertinent: "A party may move for summary adjudication as to ... one or more claims for damages ...." As used here, "claims for damages" means punitive damages. (DeCastro West Chodorow & Burns, Inc. v. Superior Court (1996) 47 Cal.App.4th 410, 421 [54 Cal.Rptr.2d 792].)