2023 IL App (1st) 221237-U
Order filed: September 6, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-1237

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DR. CAROL KUNST, individually and on behalf of The State of Illinois, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 09 CR 7019 |
| v. | ) ) | Honorable |
| CICERO PUBLIC SCHOOL DISTRICT 99 and THE TOWN OF CICERO, | ) ) ) | Marcia Maras and Patricia O'Brien Sheahan, Judges, presiding. |
| Defendants | ) ) | |
| (Joseph Longo and Longo and Associates, Ltd., | ) ) | |
| Appellants). | ) | |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Delort and Martin concurred in the judgment.

**ORDER**

*Held*: Circuit court's rulings related to a motion to adjudicate attorney's lien are affirmed, where the court correctly determined that the Attorneys Lien Act did not apply, and the record did not establish error in the circuit court's conclusion that attorney's claimed fees were unreasonable or in the court's calculation of fees under the principles of *quantum meruit*.

¶ 1    Appellants, Joseph Longo and Longo and Associates, Ltd. (Longo), appeal from several orders related to the adjudication of Longo's attorney's lien with respect to Longo's representation of plaintiff-appellee, Dr. Carol Kunst. For the following reasons, we affirm.

¶ 2    On June 15, 2009, Kunst filed her original complaint in this lawsuit against Cicero Public School District 99 (the District) and The Town of Cicero. Therein, Kunst generally alleged that in 2005 she and defendants entered into a five-year contract for her to serve as the assistant superintendent for student services. However, after Kunst raised concerns with others in the school district's administration and with the Illinois State Board of Education regarding the District's policy of deleting absences from certain student's permanent records and removing those students from enrollment records, Kunst's employment was terminated on or around July 10, 2008. Kunst's complaint sought to recover damages resulting from her termination in three separate counts alleging breach of contract, retaliatory discharge, and a violation of the Illinois Whistleblower Act. 740 ILCS 174/1 *et seq.* (West 2008).

¶ 3    From the inception of this lawsuit, Kunst was represented by Longo, after Longo was recommended by another attorney, James Morici, of the law firm of Morici, Figlioli & Associates (Morici). At the beginning of the case, Longo was paid at an hourly rate. In May 2011, after nearly two years of litigating this matter, Kunst and Longo renegotiated their fee agreement. While the parties dispute exactly how much Kunst had paid Longo to that point, with claimed amounts ranging from approximately $75,000 to over $200,000, it is undisputed that she no longer wished to pay Longo at an hourly rate going forward. Kunst worked with Morici to reach a new fee agreement with Longo, and that agreement was memorialized in an "Attorney/Client Agreement" Kunst executed on May 18, 2011 (2011 agreement).

¶ 4    Pursuant to the 2011 agreement, Kunst was not liable to pay Longo if the case was lost "THROUGH NO FAULT OF YOUR OWN." Rather, Longo agreed to continue to represent Kunst in this matter going forward on a contingent basis, with Longo to be paid following any recovery Kunst might receive from defendants. Longo was entitled to a fee of 33.3% of any such recovery,

increasing to 50% of any recovery obtained on or after the first day of trial. In addition, Longo would be entitled to "$395 per hour for all time expended," with that rate subject to annual increases. Longo was also entitled to recovery of costs and expenses advanced, with Kunst responsible for timely paying those costs and expenses upon receiving an invoice. The agreement contemplated that Longo would attempt to recover these hourly fees and expenses from defendants following any judgment, including seeking to recover under " 'fee shifting statutes.' " In the event of a favorable judgment, Longo would be entitled to both the percentage fee described above and any additional fees and costs awarded by the court. The 2011 agreement provided that Kunst granted Longo a lien on any recovery for "all services rendered and costs incurred under this Agreement."

¶ 5       However, if Kunst agreed to any settlement of this litigation that did not provide enough to fully compensate Longo for all his fees and costs, the 2011 agreement provided that Kunst would be liable to Longo for any amount not covered by the settlement. In addition, if the attorney/client relationship between Longo and Kunst terminated, Longo would be entitled to collect from Kunst "all of our attorney fees and costs, despite the outcome of the case. We will bill you for all time expended at our hourly rate which is currently $395 per hour. Our fee will be a lien on any recovery."

¶ 6       In June 2011, plaintiff filed a second amended complaint adding a fourth count alleging a violation of the Illinois False Claims Act. 740 ILCS 175/1 *et seq.* (West 2010). In that count, it was alleged that "[b]y misrepresenting the number of absences and the enrollment, the defendant effectively committed theft against the State" and "[b]y deleting absences from their records, the defendant defrauded the State by acquiring funding that the defendant would not have received otherwise." Pursuant to the False Claims Act, count four of the second amended complaint sought

to recover "2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 740 ILCS 175/4 (g)(2) (West 2010). The amended complaint was filed under seal pursuant to the statute, permitting the State an opportunity to elect to intervene and proceed with the action, or decline to do so and allow Kunst to proceed on behalf of the State. 740 ILCS 175/4 (West 2010). The State ultimately declined to intervene in this matter, and the amended complaint was unsealed in an order entered on November 14, 2011.

¶ 7    What followed thereafter was over eight additional years of litigation, including extensive motion practice, discovery disputes and numerous depositions, and the filing of a sixth amended complaint in August 2019, after most of the allegations under the False Claims Act had been previously dismissed with prejudice. Most of the amendments to the complaints reflect repeated attempts to plead a valid cause of action under the False Claims Act. The Town of Cicero was dropped as a named defendant beginning with the filing of the third amended complaint. At some point, Morici began attending hearings in this matter and he filed an additional appearance on behalf of Kunst in February 2017. The record reflects that Morici was not charging Kunst for his services in this matter.

¶ 8    While a motion to dismiss the remaining False Claims Act allegations in the sixth amended complaint was pending, Longo filed a motion to withdraw as counsel for Kunst on October 1, 2019, and a supplement to that motion on December 18, 2019. Therein, Longo asserted that the motion was supported by cause, as the attorney/client relationship had deteriorated, Kunst had become uncooperative, and she had failed to timely pay invoices.

¶ 9    On December 19, 2019, Morici filed a motion to adjudicate Longo's attorney's lien on behalf of Kunst. Therein, it was alleged that Kunst and Longo had a contract for a 33.3%

contingency fee, and that after settlement negotiations undertaken solely by Morici a settlement had been reached in the amount of $850,000. While not stated in the motion itself, the record otherwise reflects that the agreement to settle this matter was reached on November 25, 2019.

¶ 10    The motion further alleged that Longo's motion to withdraw was not supported by good cause, Longo was not entitled to its contingency fee, and Longo should be ordered to disgorge over $200,000 in legal fees already paid by Kunst. The motion therefore asked the circuit court to "to enter an Order adjudicating the Attorney's Lien of the Law offices of Longo & Associates, Ltd. to zero and any disgorgement of fees, expenses already paid and/or any other relief [it] deems proper."

¶ 11    On the same day, the circuit court entered an order noting that Kunst, represented by Morici, had no objection to the motion to withdraw and the court therefore granted Longo's motion to withdraw while explicitly making no finding as to cause. Another order was entered setting a briefing schedule on the motion to adjudicate Longo's attorney's lien. Thereafter, Morici issued written discovery requests and a deposition subpoena to Longo regarding his lien, and following the filing of a motion to compel Longo ultimately provided answers to written discovery in which he asserted objections to all requests for information.

¶ 12    On March 12, 2020, the circuit court entered an order finding that this matter had been settled "by agreement of the parties for compensatory damages based on breach of contract." Therefore, this case was dismissed with prejudice and without costs "as to all parties and all counts, including any potential claim of the State of Illinois." A settlement release was to be provided to Kunst by March 20, 2020, and she was to sign and return the release by March 30, 2020. The settlement proceeds were to be paid before April 17, 2020, with the funds to be held in Morici's trust account pending further order of the court. Finally, the order provided that the circuit court

retained jurisdiction to effectuate and enforce the settlement and adjudicate any liens, including Kunst's pending motion to adjudicate Longo's attorney's lien.

¶ 13    Thereafter, Kunst and Longo continued to litigate the sufficiency of Longo's responses to the discovery requests regarding his lien. Then, on August 19, 2020, Kunst filed a motion to release settlement proceeds. Therein, Kunst alleged that due to the coronavirus pandemic her husband had been laid off from his job in the tradeshow industry on April 24, 2020. This loss of household income had caused the family "undue and unexpected financial hardship," and Kunst therefore asked the court to release $200,000 of the settlement funds being held by Morici. The motion further asserted that none of these funds would be used for attorney fees, and the motion was supported by an affidavit executed by Kunst's husband. Longo filed a response to that motion in which he argued—*inter alia*—that circuit court only had jurisdiction to determine if a lien exists or not, pursuant to the Attorneys Lien Act (Act). 770 ILCS 5/1 (West 2020).

¶ 14    On October 14, 2020, the circuit court entered an order granting the motion to release $200,000 of the settlement funds to Kunst. The remaining settlement proceeds were to remain in Morici's trust account pending further order of the court. An emergency motion to reconsider this order was denied two days later.

¶ 15    Thereafter, Kunst and Longo spent nearly two additional years litigating the motion to adjudicate Longo's lien and a motion to compel with respect to Kunst's discovery requests regarding that lien. During that litigation, which included extensive briefing and numerous hearings, the parties disputed—*inter alia*—whether: (1) Kunst provided adequate notice of its motion to adjudicate the lien, (2) the Act applied to Longo's lien, (3) the 2011 agreement constituted a contingency agreement such that Longo was not entitled to fees pursuant to the terms of the agreement following his withdrawal from the case, (4) the termination clause of the 2011

agreement was unconscionable and/or against public policy, (5) the fees claimed by Longo were unreasonable under Rule 1.5 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct R. 1.5 (2010) (eff. Jan 1, 2010)), (6) Longo should therefore instead be compensated under a theory of *quantum meruit*, and (7) whether, alternatively, Longo should be entitled to no further fees and be required to disgorge fees previously paid by Kunst, due to Longo's purported violations of his fiduciary duties to Kunst and purported violation of the Rules of Professional Conduct when he refused her request to settle this matter for $850,000. For his part, Longo insisted that pursuant to the 2011 agreement he was entitled to recover over $1.5 million in hourly fees at his current rate of $550 per hour in addition to $620 in costs.

¶ 16    Longo also made a request during briefing on the motion to adjudicate that the circuit court recuse herself. Longo asserted that recusal was warranted due to: (1) Kunst's citation to decisions in prior attorney fee dispute cases involving Longo that included purportedly irrelevant, prejudicial, and inflammatory information regarding Longo's prior billing practices, thereby potentially prejudicing the circuit court against Longo, and (2) the circuit court's participation in "settlement discussions between the plaintiff and Cicero in which it appeared that discussions were had relating to [Longo]."

¶ 17    On July 15, 2022, the circuit court entered a written order ruling on Kunst's motion to adjudicate Longo's lien. Therein, the court began by providing a detailed recounting of the long history of this case. The court noted that throughout, Longo had been "very verbose in his filings" and engaged in a "kitchen sink" approach to pleading a cause of action under the False Claims Act that resulted in "endless hearings and orders." The court also noted that Longo admitted to never having previously handled a False Claims Act case, and that "it soon became apparent that Mr. Longo was 'learning as he went along.' " Ultimately, Longo's efforts led only to a very few False

Claims Act allegations remaining in the final amended complaint filed by Longo, with all the other False Claims Act allegations having been dismissed with prejudice. The court specifically noted that it reached this conclusion after a "review of the transcripts of the various hearings on the District's many motions to dismiss the false claims count."

¶ 18    Nevertheless, the court also acknowledged that Longo also pursued discovery regarding the breach of contract and Whistleblower Act claims. That effort resulted in the production of partially redacted documents from the District's board meetings that were "not necessarily in favor of the District," and caused the District's attorneys to obtain additional settlement authority with respect to this matter.

¶ 19    With respect the various attempts at settling this matter that occurred over the years, the court noted that at one point Longo made a "multi-million-dollar demand" at a time when his claimed fees "exceeded $1 million." Thereafter, the relationship between Kunst and Longo continued to deteriorate, and Kunst alleged that "Longo violated his fiduciary duty to her when he refused to settle the case for the $850,000 she directed him to settle. Again, Mr. Longo's alleged exorbitant fees played a role in these action[s]." Ultimately, it was not until Morici stepped in that this matter was successfully settled for $850,000 in compensatory damages for breach of contract, with the final settlement and dismissal order entered only after Longo was allowed to withdraw as counsel for Kunst.

¶ 20    Turning to its ultimate ruling on the motion to adjudicate Longo's lien, the court first rejected Kunst's request that Longo disgorge any of the fees she had paid to him prior to the execution of the 2011 agreement. The court then concluded that the 2011 agreement constituted a contingency fee agreement, and that: "Mr. Longo's 'back door' provisions regarding what happens upon his withdrawal—the increase in his hourly rate applied to huge numbers of billable hours is

unconscionable and against public policy. Given its contingent nature, Mr. Longo's withdrawal mandates that the court award him reasonable attorneys' fees on a *quantum meruit* basis." Due to its "broad discretion in matters of attorneys' fees due to its advantage of close observation of Mr. Longo's work and the Court's deeper understanding of the skill and time required in the case," the circuit court judge denied Longo's request that it recuse itself in this matter.

¶ 21    As to the fee to which Longo was entitled under his lien, the court concluded:

"Mr. Longo has often admitted that he had no experience with False Claim cases prior to the instant action. He has put forth ridiculous billing records for the work that he has done. His contribution to the settlement of this case is certainly nowhere near the level that he believes is warranted by his billable hours.

Mr. Longo's belief that his attempts at alleging a False Claims count was the reason that the District increased its offer is not borne out by the record. However, I do believe that his pursuit of the minutes and record of proceedings of the Board meetings, along with the Court's release of redacted proceedings, did have a bearing on the District's change in settlement posture. In that vein, the Court hereby orders and adjudicates Mr. Longo's lien down to an amount of $300,000.

Morici, Longo, & Associates is hereby directed to release $300,000 in settlement funds currently held in its Client Trust Account to Joseph A. Longo and Longo and Associates and the remaining $350,000 is to be released to Dr. Carol Kunst within seven days."

¶ 22    Shortly thereafter, the circuit court judge that had presided over this case retired and this matter was assigned to another judge. Longo then filed: (1) an emergency motion to stay the July 15, 2022, order pending appeal, and (2) an "Emergency Motion to Order Plaintiff to (1) Place Stop

Payment on Distribution Checks or (2) Return the Settlement Funds to the Escrow Account or Place in Court's Registry To Allow the Respondent to Appeal and Move to Stay Pursuant to Rule 305." On July 21, 2022, both motions were denied.

¶ 23    On July 28, 2022, Longo filed a motion to reconsider the July 15, 2022, order, in which he asserted that the order: (1) improperly failed to apply the Act to this matter, (2) improperly failed to enforce the contractual terms of the 2011 agreement, and, (3) assuming *arguendo* that *quantum meruit* applied, incorrectly failed to apply the relevant factors to arrive at a reasonable amount of compensation for Longo's services in this matter. That motion was denied on August 10, 2022, and Longo filed a notice of appeal on August 12, 2022.

¶ 24    On August 16, 2022, Longo filed with this court a "Motion to Restore Settlement Funds into Escrow Account or Court's Registry and then Stay Distributions Pending Disposition of Appeal" to "restore the status quo prior to the 7/15/22 order." No response or appearance having been filed by Kunst, this court granted that motion on August 23, 2022. However, that order was vacated by this court on September 19, 2022, in response to a motion to reconsider filed by Kunst after she filed an appearance. The record reflects that Kunst has received the remaining $350,000 of the settlement funds to which she is owed under the circuit court's ruling, with Morici continuing to represent Kunst without charge and accepting no part of the settlement proceeds for that work. The remaining $300,000 in settlement funds is still held in Morici's trust account.

¶ 25    In addition, on November 1, 2022, Longo filed a motion in this court to limit the "voluminous record" on appeal, asserting that because only the adjudication of his lien was at issue on appeal the record need only contain the final amended complaint filed in this matter and those portions of the record specifically related to the motion to adjudicate his lien. Kunst responded to this motion by asserting that the "most contested issue in this case" is whether Longo was entitled

to $1.5 million in fees under the 2011 agreement, or whether he should instead be compensated pursuant to the principles of *quantum meruit*. Asserting that the circuit court relied upon the entire history of this matter to make that determination, Kunst claimed that the "entirety of the record must be made available to this Court" for our review. This court denied Longo's motion to limit the record on appeal in an order entered on November 10, 2022.

¶ 26    On appeal, Longo raises numerous challenges to the order granting Kunst's motion to release $200,000 of the settlement funds, the order ruling on the motion to adjudicate his lien, and the order denying his motion to reconsider. We first consider two preliminary arguments raised by Longo.

¶ 27    First, Longo notes that he objected to the motion to adjudicate below on the grounds that Kunst failed to comply with the notice requirements of Illinois Supreme Court Rule 12 (eff. July 1, 2017) and Cook County Circuit Court Rule 2.1 (Cook County Cir. Ct. R. 2.1 (amended April 23, 1992). Longo contends that the ruling on the motion to adjudicate his lien should be reversed for Kunst's failure to comply with these rules. We disagree.

¶ 28    It is well recognized that "a failure to serve a nonmoving party with notice renders a subsequent order based on the motion voidable rather than void. The determining factor is not the absence of notice but whether there was any harm or prejudice to the nonmoving party." *In re the Matter of American Mutual Reinsurance Co*., 238 Ill. App. 3d 1, 11 (1992). Here, the record reflects that the motion to adjudicate was filed on December 19, 2020, and was first presented to the circuit court on the same day. However, it is also clear from the record that Longo was present in court when the motion was first presented and that the motion was thereafter fully briefed and considered at multiple hearings over the course of nearly *two years*, before an order ruling on the motion was entered in July 2022. Even if, *arguendo*, notice of the motion was inadequate, we fail

to see how Longo was prejudiced on that basis. Indeed, Longo himself does not claim any specific resulting prejudice. We therefore decline to reverse the order ruling on the motion to adjudicate on this basis.

¶ 29    In the second preliminary argument, Longo contends that the circuit court improperly denied his request that she recuse herself in this matter. We again disagree.

¶ 30    Pursuant to Illinois Supreme Court Rule 63(C)(1), "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," including instances where "the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding." Ill. S. Ct. R. 63(C)(1) (eff. Dec. 16, 2020). "Whether a judge should recuse himself [or herself] is a decision in Illinois that rests *exclusively within the determination of the individual judge*, pursuant to the canons of judicial ethics found in the Judicial Code." (Emphasis in original.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45. The trial court is in the best position to determine whether it needs to recuse itself. *Hassebrock v. Deep Rock Energy Corp.*, 2015 IL App (5th) 140105, ¶ 55. "When reviewing a trial judge's recusal decision, we must determine whether the decision was an abuse of the judge's discretion." *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 175 (2008).

¶ 31    Below, Longo first requested the circuit court recuse herself due to Kunst's citation to decisions in prior attorney fee dispute cases involving Longo that may have potentially prejudiced the circuit court against Longo. However, " 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *In re Marriage of O'Brien*, 393 Ill.

App. 3d 364, 380 (2009), quoting *Liteky v. United States,* 510 U.S. 540, 555 (1994). Here, the circuit court never discussed the prior cases, let alone expressed any opinions about Longo based on those prior decisions. We therefore find that the record does not reflect any deep-seated favoritism or antagonism based on citation to those decisions that would warrant finding the circuit court's refusal to recuse herself was an abuse of discretion.

¶ 32    Longo also argued below that recusal was warranted due to the circuit court's participation in "settlement discussions between the plaintiff and Cicero in which it appeared that discussions were had relating to [Longo]." However, as Longo himself admitted below, he "does not know what or how it was said, what was not said and what should have been said, facial expressions, body language and so forth." Even on appeal, Longo merely asserts that it is his "impression" that discussions regarding Longo and his lien occurred in the pretrial settlement conferences among Kunst, the District and the circuit court. Notably, the record reflects that Longo raised this concern at a hearing on December 14, 2020. In response, the circuit court expressly stated that she had had no such conversations with Kunst herself, doubted she had any such conversations with Morici or the District's attorney, and explicitly concluded that she could be "fair and impartial."

¶ 33    Again, the circuit court was in the best position to determine whether it needed to recuse herself. *Hassebrock*, 2015 IL App (5th) 140105, ¶ 55. On this record, we cannot say that the circuit court's refusal to recuse herself on this basis was an abuse of discretion.

¶ 34    While Longo raises additional arguments on appeal regarding as to why his request for recusal should have been granted, those arguments were not raised below. It is axiomatic that "[a]rguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." *U.S. Bank National Ass'n. v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 24; *Parks v.*

*Kownacki*, 193 Ill. 2d 164, 180 (2000) (same). We therefore decline to further consider these additional arguments.

¶ 35    Having addressed these preliminary issues, we next address Longo's argument that he held a valid lien under the Act and that the circuit court therefore erred by not applying the Act to this matter. We find no error.

¶ 36    The Act provides that: "Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses." 770 ILCS 5/1 (West 2020). The Act further provides that: "To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice." *Id*.

¶ 37    "The Act sets forth the requirements for effective liens. The attorney must have been hired by a client to assert a claim. The attorney must then perfect the lien by serving notice, in writing, upon the party against whom the client has the claim. The lien attaches from and after the time of the service of the statutory notice." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001).

¶ 38    "This statute was unknown to the common law and must be strictly followed," and as such

an attorney "who seeks to enforce a statutory lien must comply with any statutory requirement with respect to enforcement of such a lien." *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238, 241 (1961); see also, *Cazalet v. Cazalet*, 322 Ill. App. 105, 107 (1944) ("It has been uniformly held that such lien did not exist at common law but is purely a creature of the statute which must be strictly followed in order to establish the lien and right of action against the defendant for the enforcement thereof.") The attorney has the burden of making a *prima facie* showing that there has been strict compliance with the Act. *Moenning v. Union Pacific R. Co.*, 2012 IL App (1st) 101866, ¶ 19. Absent such a showing, the attorney forfeits his lien rights under the Act. *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 392 Ill. App. 3d 1059, 1064 (2009); *Philip Morris, Inc.*, 198 Ill. 2d at 95.

¶ 39    Here, Longo has never—either below or on appeal—made even a *prima facie* showing of strict compliance with the Act's requirement of serving "notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." 770 ILCS 5/1 (West 2020). In neither the briefs Longo filed below with respect to the motion to adjudicate nor in his briefs on appeal does Longo point to any record evidence that either of the defendants in the matter were ever served with written notice of any lien by registered or certified mail. Nor has this court's review of the record revealed any such evidence, where the only mention in the record this court has found regarding service of notice of a lien is a one-sentence assertion in Longo's motion to withdraw that Longo "has served a notice of attorney's lien onto the defendant." This is obviously insufficient to satisfy Longo's burden to make a *prima facie* showing that there has been strict compliance with the notice provisions of the Act.

¶ 40    Rather, both below and on appeal Longo has consistently relied on two alternative arguments to establish that the Act applies to his lien and to this matter. First, Longo maintains that the Act applies because Kunst's motion to adjudicate his lien was itself brought pursuant to the Act. Even if we found this to be a relevant factor in considering if Longo perfected a lien under the Act, which we do not, Longo's argument is not supported by the record.

¶ 41    Kunst's motion to adjudicate never mentioned or discussed the Act in any way. Rather, its simply attached a copy of the 2011 agreement—which as noted above contained language granting Longo a lien on any recovery—and asked the circuit court to adjudicate that lien. Nothing in the motion invoked the Act in any way. Moreover, the record clearly reflects that the applicability of the Act to this matter has been continuously disputed by Kunst both in the circuit court and on appeal.

¶ 42    Second, Longo contends that the circuit court itself ruled that the Act applies to this matter. In support of this argument, Longo notes that a hearing on the motion to adjudicate was held on October 14, 2020. An order setting a briefing schedule entered on October 14, 2020, does reflect that the matter was before the circuit court on that date with respect to the motion to adjudicate and "whether *quantum meruit* will be applied." Longo then notes that at a subsequent hearing on December 14, 2020, the circuit court noted that at the prior October 14, 2020, hearing—a hearing that was "not on the record"—the circuit court stated that it had "found that the Attorney Lien Act of the State of Illinois does pertain to this case and this lien after Mr. Longo said there was a lien. He had a lien." Longo asserts that the circuit court then violated the law of the case doctrine by not following through on this finding and in failing to apply the Act in its subsequent ruling on the motion to adjudicate his lien. We disagree.

¶ 43    " '[T]he law-of-the-case doctrine generally bars relitigation of an issue previously decided

in the same case.' [Citation.] Pursuant to the doctrine, questions decided on a previous appeal are binding on both the trial court on remand and the appellate court on subsequent appeals. [Citation.] A prerequisite to the application of this doctrine is that there has been a prior appeal." *In re Marriage of Carstens*, 2018 IL App (2d) 170183, ¶ 23. Obviously, there has been no prior appeal in this matter and as such the law of the case doctrine is simply inapplicable.

¶ 44    Furthermore, the circuit court has "inherent power to review, modify, or vacate interlocutory orders while the court retains jurisdiction over the entire controversy." *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 42; see also, *Lake County Riverboat L.P. ex rel. FRGP, L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 950 (2000) ("A trial judge may review, modify, or vacate an interlocutory order at any time before final judgment."). It is apparent that the circuit court's initial finding in October 2020 that the Act applied was an interlocutory order. The circuit court simply acted within its inherent authority by reviewing and modifying that finding when it did not apply the Act in its order ruling on the motion to adjudicate Longo's lien, an order entered nearly two years later in July 2022 and only after considerable additional briefing by the parties.

¶ 45    Having concluded that Longo has failed to make a *prima facie* showing that there has been strict compliance with the notice provisions of the Act, we conclude that Longo forfeited his lien rights under the Act. *Kovitz*, 392 Ill. App. 3d at1064; *Philip Morris, Inc.*, 198 Ill. 2d at 95. Therefore, we reject Longo's contention that the circuit court erred by failing to apply the Act to his lien or to this matter and need not further consider the numerous additional arguments Longo has raised on appeal regarding the Act's applicability to this matter.

¶ 46    Nevertheless, concluding that the Act does not apply does not mean that Longo did not have a lien on the settlement reached in this case. "In Illinois, in addition to a statutory attorney lien, an attorney may have an equitable lien where the agreement between attorney and client

constitutes an equitable assignment of a portion of a fund obtained for the client." *Achs v. Maddox*, 175 Ill. App. 3d 989, 993 (1988). "Whether an attorney-client agreement creates an equitable assignment turns on the precise language of the agreement." *Id.*

¶ 47    As noted above, the 2011 agreement contained express provisions providing that Longo had a lien on any recovery in this case, both generally and in the case of the termination of the attorney/client relationship between Longo and Kunst. Indeed, it is undisputed by the parties that the 2011 agreement created a lien in favor of Longo, with Kunst having specifically filed her motion to adjudicate the lien created by that agreement.

¶ 48    We therefore now turn to Longo's first alternative argument that, even if the Act does not apply, the circuit court erred in adjudicating his lien by failing to award him over $1.5 million in hourly fees pursuant to the express contractual language contained in the 2011 agreement.

¶ 49    The circuit court "has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case. [Citation.] The question of whether the circuit court abused its discretion is not whether the court of review agrees with the circuit court, but whether the circuit court acted arbitrarily, unconscientiously, without reason, or beyond the bounds of law. *Kannewurf v. Johns*, 260 Ill. App. 3d 66, 74 (1994); see also, I*n re Marriage of Heroy*, 385 Ill. App. 3d 640, 651 (2008) (a circuit court abuses its discretion if "no reasonable person would take the view adopted" by the circuit court).

¶ 50    In discussing this issue, we first make one important finding. Longo has consistently asserted that this matter was settled *before* he withdrew from his representation of Kunst and contends that the circuit court erred in finding otherwise. In support of this contention, Longo notes that while he filed his motion to withdraw on October 1, 2019, Morici did not reach an agreement

with the District to settle this matter until November 25, 2019, and Longo's motion to withdraw was not granted until December 19, 2019. However, the record also reflects that a final order dismissing the defendants pursuant to a final settlement was not entered until March 12, 2020, with final settlement releases executed and the final settlement amount paid sometime after that date. While a preliminary agreement to settle this matter may have been reached before Longo withdrew as Kunst's counsel, it is evident that this case was not finally "settled" until well after Longo withdrew. The circuit court did not err in reaching this conclusion.

¶ 51    This fact has significant consequences. First, as Longo was not Kunst's attorney when this matter was finally settled, the only relevant express, non-contingent fee provision of the 2011 agreement was the termination provision described above. Pursuant to that provision, in the case of termination of the attorney/client relationship Longo was entitled to collect from Kunst "all of our attorney fees and costs, despite the outcome of the case. We will bill you for all time expended at our hourly rate which is currently $395 per hour. Our fee will be a lien on any recovery."

¶ 52    In its order ruling on the motion to adjudicate Longo's lien, the circuit court found that Longo's attempt to enforce this provision and collect over $1.5 million in hourly fees was "unconscionable and against public policy." We need not address the circuit court's finding of unconscionability, as this court may affirm the circuit court "on any basis in the record, regardless of the court's reasoning." *Northwest Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 33. Rather, we affirm the circuit court's ruling with respect to the termination provision of the 2011 agreement because, on the record before us, we cannot say that the circuit court erred in finding Longo's attempt to enforce this provision and collect over $1.5 million in hourly fees was "against public policy."

¶ 53    "While Illinois courts strongly favor the freedom of contract, a court will declare a contract

void if it contravenes the public policy of the state." *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39. "Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case." *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 181 Ill. 2d 214, 226 (1998).

¶ 54 In finding Longo's attempt to enforce the termination provision against public policy, the circuit court was clearly responding to Kunst's argument that enforcement of this provision to award Longo over $1.5 million in fees would violate the public policy against excessive and unreasonable fees expressed in Rule 1.5 of the Illinois Rules of Professional Conduct of 2010 (Rules). Ill. R. Prof'l Conduct R. 1.5 (2010) (eff. Jan 1, 2010). Indeed, courts have recognized that the Rules "have the force of law and embody the public policy of our state." *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 40. Contracts that violate Rule 1.5 are against public policy and cannot be enforced. *Donald W. Fohrman & Associates, Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, ¶ 33.

¶ 55 Rule 1.5 provides, in pertinent part:

"(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed, contingent, or some type of retainer." Ill. R. Prof'l Conduct R. 1.5 (2010) (eff. Jan 1, 2010).

Committee comment 1 to Rule 1.5 provides that: "Paragraph (a) requires that lawyers charge fees that are reasonable under the circumstances. The factors specified in (1) through (8) are not exclusive. Nor will each factor be relevant in each instance." Ill. R. Prof'l Conduct R. 1.5 cmt. 1 (2010) (eff. Jan 1, 2010). Comment 4 provides that all attorney fees "are subject to the reasonableness standard of paragraph (a) of this Rule." Ill. R. Prof'l Conduct R. 1.5 cmt. 4 (2010) (eff. Jan 1, 2010). Comment 9 states that an attorney/client agreement "may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest," and that a "lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures." Ill. R. Prof'l Conduct R. 1.5 cmt. 9 (2010) (eff. Jan 1, 2010).

¶ 56    In ruling on the motion to adjudicate and in finding enforcement of the termination provision of the 2011 agreement against public policy, the circuit court carefully considered the "particular facts and circumstances of the case" (*Kleinwort*, 181 Ill. 2d at 226), and several of the specific, non-exclusive factors contained in Rule 1.5. The circuit court provided a detailed recounting of the long history of this case, Longo's extensive unsuccessful efforts to plead a valid claim under the False Claims Act despite his lack of experience with this area of law and unfamiliarity with its requirements, the nature of Longo's professional relationship with Kunst,

the multi-million dollar demands made by Longo and the fact that this case was ultimately settled by Morici for only $850,000 in damages for breach of contract, Longo's billing practices, and Kunst's allegations and the evidence that Longo's large settlement demands and refusal to settle this matter for a lesser amount were in contradiction to Kunst's direction, due in part to Longo's "alleged exorbitant fees."

¶ 57    Notably, the circuit court also specifically noted that its ruling on the motion to adjudicate was guided by its review of the transcripts of the hearings on the many motions to dismiss the False Claims Act counts in the many amended complaints filed by Longo. Despite our denial of Longo's motion to limit the record, none of those transcripts are contained in the record on appeal. Nor does the record before us contain transcripts of all the hearings on the motion to adjudicate Longo's lien. Furthermore, the circuit court also noted that its decision was only made after reviewing the "documents generated by the Motion to Adjudicate" which "fill a banker's box." The record reflects that these documents included various exhibits provided by the parties, including email correspondence between Longo and Kunst, affidavits executed by Kunst and another lawyer employed at Morici's law firm, and information prepared by Longo with respect to the amount of fees paid to him by Kunst. None of these documents are contained in the record before us.

¶ 58    As the appellant, Longo "has the burden of presenting a sufficiently complete record of the proceedings * * * to support a claim of error." *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003), citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a complete record, a reviewing court presumes that the order entered by the circuit court was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. "In fact, when the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable

presumption favorable to the judgment from which the appeal is taken, including that the [circuit] court ruled or acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006), quoting *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985).

¶ 59    Again, the question of whether the termination provision violated public policy depends on the "particular facts and circumstances of the case." *Kleinwort*, 181 Ill. 2d at 226. Because we do not have a complete record of all the particular facts and circumstances considered by the circuit court in resolving that question, we must presume that the circuit court's finding that Longo's attempt to enforce the termination provision and collect over $1.5 million in fees violated public policy was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392.

¶ 60    The only remaining, relevant fee provisions of the 2011 agreement were the contingency provisions, pursuant to which Longo would only recover a fee upon a successful resolution of this matter. However, Longo was allowed to withdraw as Kunst's attorney, without any finding as to cause, before this matter settled. As the circuit court correctly recognized, the law in Illinois is clear that "an attorney who enters into a contingent-fee agreement with a client and is discharged without cause 'is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge.' " *In re Estate of Callahan*, 144 Ill. 2d 32, 38 (1991), quoting *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 230 (1979). Thus, the circuit court correctly concluded that Longo was only entitled to be paid on a *quantum meruit* basis.

¶ 61    Thus, with respect to the circuit court's ruling on the motion to adjudicate Longo's lien, the only remaining issue is Longo's contention that the circuit court failed to properly apply the principles of *quantum meruit* to award a reasonable amount of fees for all his work on this matter since 2011.

¶ 62    Under the theory of *quantum meruit*, the trial court is literally to award the attorney " 'as

much as he deserves.' " *Kannewurf* at 74, quoting *Lee v. Ingalls Memorial Hospital*, 232 Ill. App. 3d 475, 478 (1992). The trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case. *Id.* In making its determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client. *Id.*

¶ 63    Obviously, the circuit court's determination that $300,000 represented a proper award of fees under the theory of *quantum meruit* involved consideration of many of the same factors involved in its consideration of the public policy question discussed above. For the same reasons discussed above, the lack of a complete record on appeal hampers our review of the circuit court's determination in this regard, and we must therefore presume it was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392.

¶ 64    Finally, we briefly address two remaining issues. First, on appeal Longo raises additional arguments challenging the circuit court's order granting Kunst's motion to release an initial $200,000 of the settlement funds to her. However, the "existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). When an "intervening event occurs making it impossible for a reviewing court to grant relief to any party, the case is rendered moot because a ruling on the issue cannot have any practical effect on the controversy." *In re Tekela*, 202 Ill. 2d 282, 292-93 (2002). Because we affirm the circuit court's final distribution of $550,000 in settlement funds to Kunst, we find this issue to be moot.

¶ 65    Lastly, Longo also appeals from the denial of his motion to reconsider the granting of the motion to adjudicate his lien. However, as the denial of the motion to reconsider was based in part on the same arguments and evidence that Longo has failed to incorporate in the appellate record, we must presume the order of the circuit court denying the motion for reconsideration was in conformity with law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92; see also, *Moenning v. Union Pacific R. Co.*, 2012 IL App (1st) 101866, ¶ 40 (reaching same conclusion under similar circumstances).

¶ 66    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 67    Affirmed.